**Thomas J. ALBAMONTE, Plaintiff,**

v.

**James BICKLEY, Chief of Police of the Village of Franklin Park, and Board of Fire and Police Commissioners of the Village of Franklin Park, Defendants.**

**No. 80 C 0714.**

United States District Court,
N.D. Illinois, E.D.

Oct. 18, 1983.

Stanley H. Jakala, Berwyn, Ill., for plaintiff.

Dorothy Kirie Kinnaird, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Before the Court is defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, defendants' motion to dismiss is granted.

### I. *Procedural History*

On February 11, 1980, Thomas Albamonte filed this action against his former employers, James Bickley, Chief of the Franklin Park Police Department, and the Board of Fire and Police Commissioners of the Village of Franklin Park ("the Board"). On June 4, 1980, the Court, upon defendants' motion, dismissed Albamonte's complaint with prejudice for failure to state a claim. In an unpublished opinion dated October 7, 1982, the Court of Appeals for the Seventh Circuit reversed this Court's June 4, 1980 decision and remanded the case for further proceedings. Although not disagreeing with this Court's ruling that Albamonte's original complaint failed to state an actionable claim, the Court of Appeals held that it was error to deny Albamonte an opportunity to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Accordingly, the case was remanded to permit Albamonte to amend his complaint in an attempt to plead a cognizable cause of action.

Since remand, Albamonte filed an Amended Complaint on February 18, 1983. After defendants filed a motion to dismiss the Amended Complaint, Albamonte filed a motion for leave to file a Second Amended Complaint. Albamonte withdrew his motion on August 4, 1983. On August 18, 1983, Albamonte filed "amendments" to the Amended Complaint. The Amended Complaint, filed February 18, 1983, and as "amended" August 18, 1983, is now before the Court on defendants' renewed motion to dismiss.

### II. *Facts*

The following facts are alleged in the Amended Complaint (including "amendments" filed August 18, 1983). For purposes of this motion, the Court assumes they are true. *City of Milwaukee v. Saxbe*, 546 F.2d 693, 704 (7th Cir.1976).

Prior to November 7, 1979, Albamonte was employed as a patrolman for the Village of Franklin Park Police Department. His status on the force was probationary. On October 17, 1979, while off duty, Albamonte's vehicle was struck by a hit-and-run driver. During Albamonte's pursuit of the driver, his gun accidentally discharged. The bullet struck the ground.

On October 25, 1979, Albamonte was contacted by his supervisors in conjunction with Albamonte's failure to report the discharge to his superiors. Although Albamonte initially denied that his weapon had discharged, on October 26, 1983, he admitted to his superiors that the incident occurred. On November 7, 1983, Bickley advised Albamonte that the Board, at a closed meeting, had decided to terminate Albamonte's employment. Bickley then informed Albamonte that Albamonte had the choice of resigning or being fired. Albamonte chose resignation and signed a resignation letter that was prepared by Bickley. Although Albamonte later attempted to revoke his resignation, Bickley did not honor his request.[1]

After his termination, Albamonte applied for unemployment compensation benefits from the Illinois Department of Labor. On November 19, 1979, the Village of Franklin Park, through its attorney, filed an objection to Albamonte's claim. In its two-page letter to the Illinois Department of Labor, the Village falsely stated that Albamonte was discharged from his job because of

---

**1.** For purposes of this motion the Court assumes that Albamonte's resignation was involuntary and therefore the equivalent of a discharge. The Court, however, expresses no opinion as to the ultimate resolution of this factual issue.

criminal conduct.[2] After the Department of Labor issued its decision, the Village filed an appeal on December 9, 1979. The appeal constituted a three-page letter addressed to the Department of Labor. In that letter, the Village falsely accused Albamonte of

failing to file reports, misstating and prevaricating about occurrences under investigation, using obscene and abusive language, and brandishing and discharging his service revolver in a manner likely to cause death or great bodily injury without legal justification.

Amended Complaint, filed August 18, 1983, Exhibit D, at 2. On January 10, 1980, the Department of Labor ruled that Albamonte was discharged from the police force due to misconduct on the job and therefore not eligible for benefits from November 4, 1979, through December 15, 1979.

Albamonte now seeks the following relief: (1) a "name clearing hearing" for the purpose of correcting his personnel and unemployment compensation records; (2) a declaratory judgment that defendants' conduct deprived Albamonte of a liberty interest in violation of the Fifth and Fourteenth Amendments; (3) an order rescinding Albamonte's resignation and (4) an award of costs and attorneys' fees.

### III. *Discussion*

■ The Fourteenth Amendment prohibits a state from depriving a person of life, liberty or property without due process of law. In addressing Albamonte's procedural due process claim, the Court must undertake a two-step analysis. First, it must be determined whether Albamonte's interest rises to the level of a constitutionally protected "liberty" or "property" interest. If either interest is implicated, the Court must then weigh the competing interests of the individual and the state in order to determine "what process is due." *Larry v. Lawler*, 605 F.2d 954, 957 (7th Cir.1978).

Albamonte correctly makes no claim that he was denied a protected property interest without due process of law. As this Court held in its June 4, 1980 opinion, and as the Court of Appeals agreed, Albamonte, as a probationary police officer, was subject to summary dismissal without cause. *See Romanik v. Board of Fire and Police Commissioners of East St. Louis*, 61 Ill.2d 422, 338 N.E.2d 397 (1975).

■ To state a claim for deprivation of a liberty interest, Albamonte must satisfy the "stigma plus" test as articulated in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971) and *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). That test has two parts. First, the plaintiff must be stigmatized by the State's conduct. Such "stigma" must amount to a charge that is likely to seriously damage the plaintiff's "good name, reputation, honor, or integrity" in the eyes of the community. *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1970)). Second, in addition to the infliction of stigma, a plaintiff must suffer tangible loss in conjunction with the infliction of the "stigma." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1975).

■ Albamonte argues that the two letters drafted by the attorney for the Village of Franklin Park and sent to the Illinois Department of Labor "stigmatized" him in the eyes of the community. Falsely accusing someone of criminal conduct is sufficient to satisfy the first part of the *Roth* "stigma plus" test. *See Margoles v. Tormey*, 643 F.2d 1292, 1299 (7th Cir.1981). In addition, although not articulated by Alba-

---

**2.** This allegation is stated in light of the Court's duty to make reasonable inferences from the pleadings in a light most favorable to the plaintiff. *City of Milwaukee*, 546 F.2d 693, 704 (7th Cir.1976). Specifically, the Village stated that "... [Albamonte] engaged in multiple actions of misconduct under the guidelines of employment and rules and regulations of the Police Department; that such misconduct to date has been handled on an administrative basis in lieu of proceeding under the provisions of Chapter 38, Sections 12–2, 12–5, 7–5 and 7–8 of the Illinois Revised Statutes. Exhibit C to Albamonte's Amended Complaint filed August 18, 1983, at 2.

monte, the Court infers three possible "tangible losses" suffered in conjunction with the defendants' stigmatizing statements. First, Albamonte may have been fired as a probationary patrolman in conjunction with the defendants' defamatory statements. Second, Albamonte may have been denied unemployment benefits in conjunction with the defendants' defamatory statements. Finally, Albamonte may have been denied future employment opportunities in conjunction with the defendants' defamatory statements. Each possible theory is addressed below.

### A. *Albamonte's Loss of Employment As A Probationary Patrolman*

■ Relying upon *Roth* and *Paul, supra,* the Seventh Circuit has stated that stigma to reputation "in conjunction with" dismissal from state employment is sufficient to state a claim under the *Roth* "stigma plus" test. *Margoles v. Tormey,* 643 F.2d 1292, 1298 (7th Cir.1981); *Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976). Therefore, if Albamonte is able to allege that his discharge from the Franklin Park Police Department was done "in conjunction with" the defendants' stigmatizing statements, he has stated a claim under the Fourteenth Amendment.

In *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1975), the plaintiff was discharged as a probationary policeman and asserted that his employer had denied him a liberty interest under the *Roth* "stigma plus" test. Specifically, the plaintiff charged that his superiors made false statements concerning the plaintiff's reputation on two occasions. First, the defendants made false statements directly to the plaintiff at the time of his discharge and second, the defendants made false statements after the discharge in their answers to interrogatories. The Court held that neither communication was actionable. First, the statements made directly to the plaintiff, according to the Court, were not public and therefore "cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired." *Id.* at 348, 96 S.Ct. at 2079 (*quoting Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Second, the defendants' statements made in their answers to interrogatories after the plaintiff's discharge were not actionable because they "did not cause the discharge." *Id.* 426 U.S. at 349, 96 S.Ct. at 2079. The Court concluded that, "[a] contrary evaluation ... would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake." *Id.*

*Bishop* is controlling in the instant case. Like the defendants' answers to interrogatories, the two letters sent to the Department of Labor were sent *after* Albamonte's discharge. Accordingly, it is impossible that any statements made in these letters contributed to Albamonte's discharge. Therefore, defendants' allegedly stigmatizing statements were not made "in conjunction with" Albamonte's loss of employment as a probationary policeman for the Village of Franklin Park.[3]

### B. *Albamonte's Loss of Unemployment Compensation Benefits*

■ The second possible theory for Albamonte is that defendants' defamatory statements were made "in conjunction with" Albamonte's loss of unemployment benefits. Albamonte relies upon *Larry v. Lawler,* 605 F.2d 954 (7th Cir.1978), and argues that "[t]he actions of the defendants, by sending false information to the Illinois Unemployment Compensation Board concerning the plaintiff's discharge, stigmatized the plaintiff, in that he was wrongfully deprived of these benefits without a due process hearing." Plaintiff's Memorandum, at 2. *Larry,* however, is not dispositive of the issue. In *Larry,* the plaintiff sued the Civil Service Commission because it had published false statements regarding the plaintiff's use of intoxicating

---

**3.** Albamonte attempts to distinguish *Bishop* on the grounds that, unlike the plaintiff in *Bishop,* Albamonte suffered the loss of unemployment benefits in addition to the loss of a job. The loss of unemployment benefits as a tangible loss under the "stigma plus" test is discussed in Section B, *infra.*

beverages. In addition to publishing the false statements, the Commission rated Larry "ineligible" for federal employment. The Commissioner's determination barred Larry from all federal employment for three years. *Id.* at 956. Based on these facts, the Court held that Larry had stated an actionable claim under the *Roth* "stigma plus" test. *Id.* at 959.

Unlike *Larry*, the defendants in the instant case have not deprived Albamonte of a tangible loss such as unemployment compensation benefits. *Margoles v. Tormey*, 643 F.2d 1292 (7th Cir.1981) is more closely analogous than *Larry*. In *Margoles*, the plaintiff, a physician, alleged that the Wisconsin Board of Medical Examiners forwarded false information concerning the plaintiff to the Illinois medical licensing board which resulted in the plaintiff being denied an Illinois license. The Court held that such allegations were insufficient to state a claim under the "stigma plus" test because the Wisconsin defendants were "not connected with any denial of a government benefit or privilege, i.e., licensure." *Id.* at 1299. The Court concluded that, absent allegations of a conspiracy, Illinois' decision to deny the plaintiff a license was "separate and distinct from any defamatory statements made by these Wisconsin officials." *Id.*

In the instant case, the Illinois Department of Labor denied Albamonte unemployment benefits. No conspiracy has been alleged between the present defendants and the Department of Labor. In fact, the Department of Labor is not a party to this case. As in *Margoles, supra*, Albamonte's claim is reduced to a claim for defamation. However, "defamatory statements by public officials, standing alone, are insufficient to state a claim under § 1983." *Margoles*, 643 F.2d at 1299. *See also Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

### C. *Albamonte's Denial of Future Employment Opportunities*

Albamonte's third possible theory merits little discussion. Without support-

ing facts, Albamonte alleges that the defendants' stigmatizing reports "are in the plaintiff's permanent personnel file thereby foreclosing future employment opportunities." Amended Complaint, as amended August 18, 1983, ¶ 32. Even assuming Albamonte could amend his complaint to aver facts supporting this allegation, such an allegation would nevertheless fail to state an actionable claim. Albamonte's failure to obtain future employment is the result of an independent decision by someone other than these defendants. Absent allegations of conspiracy, merely pleading defendants' defamatory statements and another party's decision not to hire Albamonte is not actionable under § 1983. *See Paul v. Davis*, 424 U.S. 693, 704, 96 S.Ct. 1155, 1162, 47 L.Ed.2d 405 (1975); *Margoles v. Tormey*, 643 F.2d 1292, 1299 (7th Cir.1981); *Adams v. Walker*, 492 F.2d 1003, 1008-09 (7th Cir.1974).

### Conclusion

For the reasons stated herein, defendants renewed motion to dismiss the Amended Complaint is granted. Accordingly, plaintiff Albamonte's Amended Complaint, as amended August 18, 1983 is ordered dismissed.

IT IS SO ORDERED.