Rev. Timothy A. HOLLY, Plaintiff,

v.

CITY OF NAPERVILLE, et al., Defendants.

No. 82 C 6981.

United States District Court, N.D. Illinois, E.D.

Feb. 7, 1985.

Timothy A. Holly, pro se.

Marvin Glink, Peter D. Coblentz, John B. Murphey, Ancel, Glink, Diamond, Murphy & Cope, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This is an age, race and handicap discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Civil War statutes, 42 U.S.C. §§ 1981 and 1983. Defendants have brought a motion for summary judgment on some parts of the

complaint. We grant that motion in part and deny it in part.

**FACTS**

Plaintiff is a black person and is blind in one eye. At the time his complaint was filed, he was 50 years of age. Plaintiff was an employee of the City of Naperville, Illinois (the "City"), from July 1978 to August 1981, when he was discharged. Plaintiff alleges that his termination was motivated by his age, race and handicap, and that he was denied due process when not granted a hearing by the City's Personnel Board to review his discharge.

Plaintiff was hired as Data Processing Manager. He was interviewed by the City's Personnel Officer, who, according to plaintiff, informed plaintiff that if he were hired, his job would be protected by the City's Administrative Directive No. 29 ("AD. 29"), which he was told prevented discharge without cause and allowed a hearing designed to ensure him of job security. Holly Dep. at 19–20, 26–27. Greg Bielawekski, acting City Manager, was also present at this interview. *Id.* at 18.

Plaintiff accepted the position and received positive job evaluations with pay raises covering the period of July 1978 to January 1981. Plaintiff's Memorandum Urging Denial of Defendants' Motion for Partial Summary Judgment, Exhs. C(1)–(17). Originally, he was supervised by Bielawekski. Holly Dep. at 21–22, 60–61. When Bielawekski left the City's employ sometime in early 1980, plaintiff was then supervised by the new City Manager, defendant George Smith. *Id.* at 61.

According to plaintiff, the City's Finance Officer, defendant John Lawlor, began to interfere with plaintiff's Data Processing Office because Lawlor did not want an in-house processing office. *Id.* at 46–50. Plaintiff states that Lawlor also expressed a racial animus toward plaintiff and made several disparaging racial remarks to him. *Id.* at 56.

In 1980, when Bielawekski was in the process of leaving, the Financial Advisory Board, created by the City Council, recommended formation of a "Users' Group," a committee designed to advise on use of the City's computer system. Lawlor was a member of this Group, and plaintiff believed that formation of the Group was a removal of his authority as Data Processing Manager, and motivated by Lawlor's racial bias, since no other office was subject to such monitoring. *Id.* at 72, 77, 80, 83, 87, 103. Throughout 1980, plaintiff continued as Data Processing Manager, directly reporting to Smith and subject to the Users' Group supervision.

In December 1980, plaintiff visited cousins in California on his vacation. These cousins had formed a computer company and were working with the town of Fairfield, California. Plaintiff accompanied his cousins to a meeting with the Fairfield City Manager, at which the best systems for a city's data processing needs were discussed. Plaintiff informed Smith of this meeting. According to plaintiff, Lawlor learned of this meeting and accused plaintiff of trying to sell the City's computer programs to Fairfield. Holly Dep. at 166. Plaintiff believed that Smith became influenced by Lawlor's accusation and began to question plaintiff's integrity. *Id.* at 167.

Smith fired plaintiff in a meeting on August 5, 1981. Plaintiff asked Smith the reasons for his discharge and was not told. *Id.* at 272. During this meeting, Smith stated that he preferred having plaintiff resign rather than being fired because his chances of getting another job would be limited by his age, handicap and race. *Id.* at 273, 296.

According to plaintiff, he then told Smith that he wished his discharge to be reviewed by the City's Personnel Board, in accordance with AD. 29. *Id.* at 276. Plaintiff never spoke directly to the Board. *Id.* at 277. Plaintiff alleges that Smith told him such a hearing would be useless, since Smith's word would be final. *Id.* Plaintiff then requested a hearing from defendant Chester Rybicki, Mayor of the City. *Id.* at 280. Plaintiff states that Rybicki informed him that his discharge was a matter between plaintiff and Smith and that Rybicki

did not want to become involved. *Id.* at 281.

Plaintiff was replaced by a white male, thirty-seven years old, with no handicap. Defendants' Answer to Plaintiff's Revised Interrogatory # 10.

## DISCUSSION

### I. DUE PROCESS CLAIMS

Plaintiff alleges that his due process rights were violated because he was not given a hearing by the Personnel Board concerning his discharge. He bases his right to a hearing on two separate interests: (1) a property interest in continued employment with the City, and (2) a liberty interest in his good reputation. We deal with each in turn.

#### A. Property Interest

■ The requirements of due process apply to property interests created and defined by sources independent of the Constitution itself, such as state law. *See Board of Regents v. Roth,* 408 U.S. 564, 569–70, 577, 92 S.Ct. 2701, 2705, 2709, 33 L.Ed.2d 548 (1972). Plaintiff here claims AD. 29 to be the source of a property interest in his continued employment. AD. 29 lists reasons for disciplinary action against an employee of the City. The directive also states that when action is taken against an employee, "the employee shall be advised in writing that he or she may appeal the action to the Personnel Board as provided in the City Code." Defendants' Memorandum in Support of Motion for Partial Summary Judgment, Ex. A.

> Section 7.105(b) of the City Code states: *Powers.* The personnel board shall hear appeals submitted by any regular employee relative to any suspension, demotion or dismissal. The personnel board shall also consider any personnel matter referred to it by the city manager for its recommendation. The personnel board shall submit a written statement of facts, findings, and recommendations to the city manager. When the Board finds the action appealed as been the result of political, religious or racial prejudice, its findings shall be final, and the city man-

ager shall reinstate the employee in his position. In all other cases, the board's recommendations shall be advisory only, and the action taken by the city manager shall be final and conclusive. Any hearing conducted by the personnel board relating to an employee shall be open to the public if requested by the employee.

*Id.* at Ex. C.

Defendants argue that plaintiff has no property right in continued employment because plaintiff was a department head, and AD. 29 does not apply to department heads. Moreover, even if AD. 29 did apply to plaintiff, plaintiff failed to request an appeal before the Personnel Board.

> Section 7.102 of the City Code states: *Coverage ...* The following persons within the classified service are exempt from those personnel rules pertaining to appointment and removal: department heads, assistant department heads, division heads, and administrative secretaries and assistants in the city manager's office.

*Id.*

Defendants claim that plaintiff comes within the ambit of this exclusionary provision, and that, since AD. 29 cannot and does not purport to supersede § 7.102, plaintiff as a Department Head, cannot claim a property interest arising from the directive.

In support of their claim that plaintiff was a department head, defendants point to the following exchange in plaintiff's deposition:

Q: Was the Data Processing Department in effect its own department?

A: Yes.

Q: And you were the department head of that department?

A: In that department, head of that department.

Holly Dep. at 31. Plaintiff also calls himself a "department head" at various other times, *e.g.* Plaintiff's Answer to Defendants' Interrogatory # 6; Holly Dep. at 138, 282. Defendants also argue that plaintiff's

main evidence of discrimination is alleged interference by the Financial Advisory Board in his department, an interference that plaintiff asserts did not occur in other departments. This accusation of interference, defendants claim, flies in the face of plaintiff's argument that he was not a department head. Defendants' Reply Memorandum in Support of Motion for Partial Summary Judgment.

■ While we find this to be strong evidence in support of defendants' argument, we believe that an issue of material fact still exists as to whether plaintiff was in fact a department head to be excluded from AD. 29's protections. Plaintiff has stated that he was told by the Personnel Officer, in the presence of the City Manager, that plaintiff would be covered by AD. 29. This suggests that both the City Manager and Personnel Officer did not believe that they were hiring plaintiff as an exempt department head. Moreover, defendants, in a report filed with the EEOC in response to plaintiff's charges, admitted that "Mr. Holly had a right to appeal his discharge to the Personnel Board." Plaintiff's Memo. Urging Denial, Ex. A(6) at ¶ 5. The interference of which plaintiff complains suggests that his department was not treated like other departments, a situation that could indicate that the department was not to be treated as a separate department or division under § 7.102. Finally, a city chart that delineates the various departments does not label the Data Processing Office a "department," unlike the eight other departments, such as the "Finance Department," and the "Legal Department." *Id.* at Ex. J(20). Instead, the Data Processing Office is listed under the "Assistant City Manager for Auxiliary Services," along with the Personnel Office and other separate entities not labeled "Departments" or "Divisions." Conceivably, under this chart, the Data Processing Office could be considered neither a department nor a division for the purposes of application of § 7.102.

■ Defendants' argument that even if plaintiff had not been a department head, he failed to ask for a hearing, is not tenable. Plaintiff states that he asked Smith for a hearing, and was told by Smith that such an oral request effectively invoked his right to a hearing, but that such a hearing would be useless. Holly Dep. at 277. Later, plaintiff also requested a hearing from the Mayor. Section 7.105(b) does not indicate how an employee is to go about requesting a hearing. In the absence of a specific application procedure, we believe that a request to the City Manager and the Mayor sufficiently put the City on notice that plaintiff was invoking his right. Moreover, under AD. 29, it was the *City*'s duty to advise plaintiff in writing of his right to appeal, which it failed to do. Therefore, we deny defendants' motion for summary judgment insofar as it calls for dismissal of plaintiff's property interest due process claim.

## B. Liberty Right Interest

Plaintiff also alleges that he had a right to a due process hearing because defendants made statements that resulted in stigma to his reputation.

■ The concept of liberty recognizes two particular interests of a public employee: "1) the protection of his good name, reputation, honor and integrity and 2) his freedom to take advantage of other employment opportunities." *Hadley v. City of DuPage*, 715 F.2d 1238, 1244 (7th Cir. 1983), *cert. denied*, — U.S. —, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984). *See Munson v. Friske*, 754 F.2d 683, 693–694 (7th Cir. Jan. 29, 1985). The Seventh Circuit has interpreted this recognition to mean that an employee is entitled to a due process hearing if a government official makes charges against the employee that "might seriously damage his standing and associations in his community." *Munson*, at 693; *Hadley*, 715 F.2d at 1245.

Plaintiff claims the following to be such charges:

(1) Statements attributed to Smith in a newspaper article concerning plaintiff's discharge;

(2) The content of defendants' EEOC response as it was disseminated among city employees;

(3) Plaintiff's repetition of the EEOC response's content when interviewing for employment; and

(4) Submission of the EEOC response by defendants' attorney to plaintiff's prospective attorney.

As a matter of law, none of these statements entitled plaintiff to a hearing.

**The Newspaper Article**

■ In an article appearing in a Naperville newspaper shortly after plaintiff's discharge, Smith is quoted as firing plaintiff because his "management of the data processing office was less than satisfactory." An unattributed source is quoted as stating that "utility accounts have been 'dropping out' of the city's billing system, only to be discovered and reinserted in the system later, and ... there have been other data processing problems as well." The article also quotes Smith commenting that plaintiff took a trip to California around Christmas, without further discussion, and that the City had "a number of problems for a long period of time" with the billing system.

None of these remarks is stigmatizing. The charges quoted suggest that plaintiff was incompetent or mismanaged the office. The Seventh Circuit has held that such charges are not enough to give rise to a liberty interest requiring a hearing. *Munson*, at 693; *Hadley*, 715 F.2d at 1245. Instead, the charges must have "impugned his moral character" and relate to characteristics such as "dishonesty or other job-related moral turpitude." *Lawson v. Sheriff of Tippecanoe County, Indiana*, 725 F.2d 1136, 1138–39 (7th Cir.1984). Otherwise, the statements are not so likely to make the employee unemployable in the future as to "formally exclud[e]" him from his occupation and strip him of his liberty interest in future employment opportunities. *Id.* at 1139.

Plaintiff claims that the remark concerning utility accounts "dropping out"

amounts to a charge of embezzlement and dishonesty. We find this interpretation unreasonably strained. By "dropping out," the speaker was obviously complaining of a technical deficiency, within the category of the "other data processing problems" that he was discussing at the time. Moreover, this speaker is not identified to be even a City official. Hence, no statement quoted in the article rises to the level of stigma by the government body, and plaintiff was not deprived of a liberty interest as a matter of law.

**EEOC Comments**

After plaintiff was fired, he filed charges against the City with the EEOC. The City then filed its response to plaintiff's claim "several months" after plaintiff's discharge. In the course of preparing the response, plaintiff states that publication of the content of the response occurred when defendants consulted with their employees. Plaintiff also complains of publication when plaintiff was forced to report the content of the response to prospective employers in his search for employment and when defendants sent a letter containing portions of the response to plaintiff's prospective counsel on June 25, 1982.

■ In the EEOC response, possibly two remarks could be viewed as impugning plaintiff's moral character or honesty:

(1) ¶ 8.14. Mr. Holly's conduct was inappropriate occasionally in dealing with female employees. This hampered his ability to work effectively with them. He made off-color comments to Jeanne Wisniewski and Kathy Redding and others. This writer once heard him address one of his staff members in the following manner. 'Debbie (Perkolup), get your butt over here, sweetheart.' Mr. Holly was advised by the City Manager that it was inappropriate to address women as 'sweetheart;' however, he continued to do so. The respect he demanded for himself was strangely lacking in his dealings with women. This conduct did little to promote

good working relationships with them.

(2) ¶ 8.18. Mr. Holly's visit to Fairfield, California gave Mr. Smith and Mr. Lawlor the impression that he was trying to sell City of Naperville programs to Fairfield, California. It seems likely that Naperville programs would be of far more interest to Fairfield than programs developed for General Motors. This incident created some doubt about Mr. Holly's integrity.

Elsewhere in the EEOC response the City again refers to this California visit: "¶ .5. Mr. Holly was discharged August 6, 1981, for ... attempted conversion and sale of City property." Plaintiff's Memo. Urging Denial, Ex. A(6), (15), (16).

Conceivably, ¶ 8.14 accuses plaintiff of sexual harassment,[1] and ¶¶ 8.18 and 5. accuse him of theft.

■ However, while the *content* of these comments may impugn plaintiff's integrity, their publication is too attenuated from his discharge to implicate plaintiff's liberty interest. It is not sufficient to establish a due process claim that a government official simply defame the plaintiff. The defamation must occur "in the course of the termination of the employment," *Hadley,* 715 F.2d at 1246, citing *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), or "in conjunction with" discharge or failure to rehire. *See Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir. 1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). This is known as the "stigma-plus" test: "stigma" "plus" proximity to discharge.

In an earlier opinion in this case, we refused to dismiss plaintiff's liberty interest claim because it was not clear at that point in the pleadings how long after discharge defendants allegedly made defaming statements. *Holly v. Naperville,* 571 F.Supp. 668 (N.D.Ill.1983). There, we stat-

ed that the "in the course of" or "in conjunction with" test can be met "even though some period of time passes between the termination and the publication of the defamatory remarks." *Id.* at 676. We added:

On a motion to dismiss a *pro se* complaint, we will not require that the time span be pled. If it develops that the time between the termination and the defamation was so long as to attenuate any link between the two, we can dispose of that issue on a motion for summary judgment.

*Id.*

The time between termination and defamation now has been established as "several months;" the defamations, aside from those alleged in the newspaper article, *supra,* have all been traced to defendants' EEOC response. Therefore, no defamation preceded plaintiff's instigation of an administrative proceeding designed to address plaintiff's claim of unlawful discharge. Under such circumstances, we are compelled to follow the Court's controlling decision in *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976).

In *Bishop,* the plaintiff complained of statements made by the defendant in answer to interrogatories submitted by the plaintiff in the course of litigation of plaintiff's suit against the defendant for unlawful discharge. The Court held that these statements could not form the basis of a liberty interest claim:

Since the ... communication was made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim. A contrary evaluation ... would penalize forthright and truthful communication between ... litigants.

*Id.* at 348–49, 96 S.Ct. at 2079–80.

Similarly, statements made in two letters sent to the Department of Labor in objec-

---

**1.** While the accusation made in the response seems mild, we note that aside from his jobs in the area of data processing, plaintiff is also and was known by defendants to be an ordained minister. Thus, attacks however mild upon his moral integrity could have an impact upon his employment as a minister.

tion to a plaintiff's claim for unemployment compensation benefits were held not to be made "in conjunction with" dismissal. *Albamonte v. Bickley,* 573 F.Supp. 77, 81 (N.D.Ill.1983).

■ Even if *Bishop* does not hold that all employer statements made in a legal proceeding concerning an employee's discharge are too attenuated in time from the discharge to support a constitutional defamation claim, plaintiff's claim here still fails. The Court in *Bishop* voiced its desire not to discourage candid discussion between litigants. To rule that the EEOC response could be used to raise a constitutional defamation claim would result in a chilling effect equal to that found unacceptable in *Bishop.* Plaintiff admits that he cannot object to the EEOC response itself, and limits his claim to publications surrounding the response. Plaintiff's Memo. Urging Denial at 9. But one of the publications of which plaintiff complains, statements made to City employees in preparation of the response, is so closely integrated with the response itself, that use of these statements would also violate the principle announced in *Bishop.*

The second publication of which plaintiff complains, his own repetition of the response's content, is also not actionable. Plaintiff claims that he is forced to repeat the stigmatizing statements made in the EEOC response when he seeks employment: prospective employers ask why he was discharged, and he feels compelled to reveal the contents of the response. But plaintiff is not compelled to reveal the contents of the response. This is not a situation in which prospective employers have access to stigmatizing statements placed in the employee's personnel file, *e.g., Velger v. Cawley,* 525 F.2d 334, 337 (2d Cir.1975),

*reversed on other grounds,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1976); *Giordano v. Roudebush,* 448 F.Supp. 899, 905 (S.D.Iowa 1978). Because plaintiff "can control the kind and amount of information that is released" to employers, he cannot claim his statements to be the basis of a claim. *See Green v. Board of School Commissioners of City of Indianapolis,* 716 F.2d 1191, 1193 (7th Cir.1983).

Finally, plaintiff complains that defendants released portions of the EEOC response to an attorney whom plaintiff hoped to retain as his counsel in this case. This is not a release to the public damaging plaintiff's reputation or chances for future employment. Plaintiff sought to employ the attorney, not be employed by him, and unless a stigmatizing statement is made public or hinders plaintiff's opportunity to be employed in the future, it has no impact upon his liberty interest. *See Munson,* at 694. Moreover, these statements were made almost eleven months after plaintiff's discharge; clearly, any possible connection with the discharge is too attenuated to give rise to a due process claim.

Because the statements of which plaintiff complains either do not impugn his moral character, or are too remote in time to have been made "in conjunction with" his discharge, we grant summary judgment for defendants as to plaintiff's due process liberty interest claim, and dismiss Count II of plaintiff's complaint.[2]

## II. AGE AND REHABILITATION ACT CLAIMS

Plaintiff claims that he was discharged because of his age and handicap, and that his discharge amounts to a violation of the Rehabilitation Act and the ADEA. De-

---

**2.** In a memorandum of law, plaintiff states that the comments of which he complains in Count II would constitute libel *per se* under Illinois law and "[i]f plaintiff's claim is found not to rise to the level of a constitutional tort then the court should exercise its discretion by trying plaintiff's claim under its pendant [sic] claim jurisdiction." Plaintiff's Memo. Urging Denial at 10. If plaintiff is indicating that he wishes to add a libel or slander count to his complaint, he must follow Fed.R.Civ.P. 15 and seek leave to amend his complaint accordingly. However, we note at this point that if plaintiff grounds his state law defamation claim on the same comments upon which his liberty interest claim was based, the comments are probably privileged under state law. *See Thomas v. Petrulis,* 125 App.3d 415, 80 Ill.Dec. 713, 465 N.E.2d 1059 (2d Dist.1984).

fendants move for summary judgment on the ground that plaintiff has offered no evidence to suggest that either his handicap or age was a motivating factor in his discharge. We agree with defendants and dismiss plaintiff's age and handicap claims.

## A. Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides that:

No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794.

In order to make out a case under § 504, plaintiff must meet a four-prong test: (1) he is a "handicapped individual" under the Act; (2) he is "otherwise qualified" for the position sought; (3) he was excluded from the position sought solely by reason of his handicap; and (4) the position he seeks exists as part of a program or activity receiving Federal financial assistance. *Plummer by Plummer v. Branstad,* 731 F.2d 574, 577 (8th Cir.1984); *Strathie v. Department of Transportation,* 716 F.2d 227, 230 (3d Cir.1983); *Joyner by Lowry v. Dumpson,* 712 F.2d 770, 774 (2d Cir.1983); *Doe v. New York University,* 666 F.2d 761 (2d Cir.1981). Since the first and last of these elements are not questioned, we turn to the proof offered in relation to the second and third elements.

Plaintiff has offered job evaluations and comments made by his superiors concerning their requests for plaintiff's pay raises as evidence that he was a qualified Data Processing Manager. Plaintiff's Memo. Urging Denial, Ex. C(1)–(17). We agree that this evidence raises a question of material fact as to the second element. Therefore, the only issue remaining is whether plaintiff was fired due "solely by reason of his handicap." Defendants claim that plaintiff has not met his burden of proof on this point.

Plaintiff has offered no evidence to suggest that his handicap was a motivating factor in his discharge. Throughout his deposition, plaintiff repeatedly admits that his handicap played no part in any actions taken against him. Holly Dep. at 81, 142, 157. The only piece of evidence that plaintiff points to in support of his handicap claim is the statement Smith allegedly made when discharging plaintiff: "You are going to have difficulty in getting a job because of your handicap." *Id.* at 296.

This statement fails to meet a plaintiff's burden of proof. While it is well settled that the burden initially is on the movant to demonstrate that no genuine issue as to any material fact exists, and that any doubt as to the existence of a genuine issue of material fact will be resolved against the movant (above all in *pro se* cases), once the movant demonstrates that no competent evidence exists to support a judgment for plaintiff if the case went to trial, the burden then shifts to the non-movant to present competent evidence in opposition to the motion for summary judgment. *See Posey v. Skyline Corp.,* 702 F.2d 102, 106 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Smith's statement does not constitute such evidence.

On its face, Smith's statement is neutral. It merely states what Smith could believe to be a fact of life. The comment does not indicate that plaintiff was being discharged because of his handicap or that he was considered an inferior worker, except if one applies an unreasonably strained interpretation to Smith's words. Even in discrimination cases, where we are attempting to discern a defendant's intent, the court is "not required to evaluate every *conceivable* inference which can be drawn from evidentiary matter, but only reasonable ones." *Parker v. Federal National Mortgage Association,* 741 F.2d 975, 980 (7th Cir.1984) (emphasis in original) (ADEA claim). Because this statement, if the only evidence presented at trial, would result in a directed verdict for the defendant, it fails to meet plaintiff's burden of proof. *Id.*

Defendants' motion for summary judgment on plaintiff's Rehabilitation Act claim is granted.

## B. ADEA Claim

 We analyze plaintiff's age discrimination claim applying the test announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[3] First, the plaintiff must prove a prima facie case of discrimination by showing that (1) he was in the protected class; (2) he was doing his job well enough to meet his employer's legitimate expectations; (3) in spite of his performance he was discharged; and (4) he was replaced by a younger person outside the protected age group. *See Trembath v. St. Regis Paper Co.*, 753 F.2d 603 (7th Cir.1985). Once the plaintiff has proved these four elements, the burden of production then shifts to the defendant to articulate lawful reasons for discharge. *La Montagne*, at 1409. If the defendant successfully produces such evidence, the burden then shifts back to the plaintiff to prove that his proffered reasons are pretextual, "by showing either that a discriminatory reason more than likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Id.; Golomb v. Prudential Insurance Co. of America*, 688 F.2d 547, 550 (7th Cir.1982).

No dispute exists as to elements one, three and four. Defendants focus on the second element, and state that they fired defendant because of unsatisfactory management performance; they point to their EEOC response for specific performance deficiencies. Defendants' Answer to Plaintiff's Revised Interrogatory # 14.

Previous decisions are somewhat contradictory as to whether defendants' explanation of poor performance should be considered in determining whether a prima facie case has been presented, *e.g., Hugh v. Koehring Co.*, 718 F.2d 239 (7th Cir.1983); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1220 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), or whether defendants have articulated a legitimate reason for discharge, *e.g., Parker*, 741 F.2d at 978. Resolving this point in favor of the plaintiff, we assume that he can meet his burden in proving a prima facie case and that defendants are asserting a legitimate reason for discharge. The burden then rests on plaintiff to offer evidence to demonstrate that defendants' reason is pretextual.

Plaintiff offers four pieces of evidence to show pretext: (1) Smith's statement at discharge urging resignation; (2) plaintiff's dismissal without cause or warning and replacement by a younger worker; (3) denial of a Personnel Board hearing; and (4) defendants' discharge of another employee in the protected age group. Plaintiff's Memo. Urging Denial at 15; Holly Dep. at 273, 290, 292.

 The first piece of evidence has no weight for the same reasons articulated above concerning plaintiff's Rehabilitation Act claim. *See supra* at 16–17. Replacement by a younger worker also does not permit an inference of discrimination; that evidence is merely repetition of the prima facie case. *See La Montagne*, at 1413. Plaintiff's reassertion that he was fired without cause is also redundant. *Id.* at 1414.[4] Finally, the fact that plaintiff was

---

**3.** *McDonnell* was a racial discrimination claim brought under Title VII of the Civil Rights Act of 1964. However, its test is uniformly applied to age discrimination cases as well. *See La Montagne v. American Convenience Products*, 750 F.2d 1405, 1409 n. 1 (7th Cir. Dec. 27, 1984), slip op. at 5 n. 1.

**4.** We find this situation somewhat perplexing. The court in *La Montagne* states that a plaintiff can demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence," yet the court also states that proof of capable performance does not demonstrate that the employer's explanation of lack of deficient performance is pretextual. *See La Montagne*, at 1409, 1414. Aside from direct evidence of dis-

not warned of his looming termination also does not demonstrate pretext. *Pierce v. New Process Co.*, 580 F.Supp. 1543, 1545 (W.D.Pa.1984).

■ This leaves points three and four—the fact that plaintiff was given no hearing, and defendants' treatment of a City purchasing agent, Hal Leiman. Defendants' treatment of Mr. Leiman is not relevant. Apparently, Mr. Leiman was fired, at the approximate age of 65. Plaintiff has attached some interoffice memoranda in which Mr. Leiman accuses the City of firing him because of his age, and the City responds with criticism of Mr. Leiman's work performance. On their face, the memoranda do not indicate discrimination toward Mr. Leiman, and we are left with merely the fact that another employee in the protected age group was fired. This fact hardly meets the requirements for statistical evidence of discriminatory intent. *See Parker*, 741 F.2d at 980. Absent evidence of *discrimination* against other em-

ployees (rather than blanket assertions), the fact that another employee "received adverse treatment from [the employer] at the same period has little relevance under the facts *sub judice.*" *Erwin v. Bank of Mississippi*, 512 F.Supp. 545, 554 (N.D. Miss.1981).

■ Finally, plaintiff claims that Smith's refusal to give him a hearing somehow proves a discriminatory intent in plaintiff's discharge. Under § 7.105(b) of the City Code, the Personnel Board reviews terminations upon appeal by the employee. If the Board finds that the termination was due to "political religious or racial prejudice," it can overturn Smith's decision; otherwise, its "recommendations shall be advisory only, and the action taken by the city manager [Smith] shall be final and conclusive." According to plaintiff's theory, Smith's statements either discouraging or refusing a hearing were made in an effort to keep the Board from reversing his decision. Plaintiff states that Smith at-

crimination, we do not see how else an employee can prove that his employer's defense of deficient performance is "unworthy of credence;" yet, courts repeatedly state that the *McDonnell* test was designed to prevent a plaintiff from having to produce direct evidence. *See La Montagne*, at 1409.

But the court in *La Montagne* is not alone in ruling that an employee cannot rely on his protestations of capable performance to defeat a motion for summary judgment. Courts have repeatedly rejected a discrimination claim when the employee's proof is based upon a process of elimination, that is, the argument that plaintiff must have been fired because of age, because he was performing capably, and no other reason was given for discharge. *Locke v. Commercial Union Insurance Co.*, 676 F.2d 205, 206 (6th Cir.1980); *Simmons v. McGuffey Nursing Home*, 619 F.2d 369, 371 (5th Cir.1980); *Bobbitt v. PBA, Inc.*, 31 F.E.P. Cases 366 (D.C.Minn.1983); *Oritz v. Ciba-Geigy Corp.*, 87 F.R.D. 723 (N.D.Ill.1980) Title VIII).

The burden of proof rests upon the plaintiff at all times to prove discrimination because of age. *Burdine*, 450 U.S. at 252, 101 S.Ct. 1093. Therefore, somewhere in his case, the plaintiff must offer some proof of motive and intent to discriminate because of age. *See Kephart*, 630 F.2d at 1218. We believe that when courts state that reptition of evidence of capable performance cannot prove pretext, they are indicating that such evidence does not meet plaintiff's burden as to the ultimate issue, discrimination.

"Pretext" for the purposes of the *McDonnell* test is not the equivalent of false. *See Golomb*, 688 F.2d at 550. While falsity may prove a pretext for *something*, "pretext" for *McDonnell* purposes means pretext of non-*discrimination*. *See id.* ("pretext" means that age was a motivating factor in the employee's discharge). While evidence of capable performance may prove that the employer's proffered reason is false, it does not directly follow that the employer is attempting to cover up discrimination. He may be covering up something else—*e.g.*, nepotism or a simple ill will. By ruling that evidence of capable performance does not prove pretext in ADEA claims, we believe that courts are indicating that such evidence is insufficient to prove pretext *of age discrimination*.

Thus, the plaintiff in an ADEA claim must produce some evidence, such as employer statements, statistics or a pattern and practice of discrimination in order to survive a summary judgment motion. To the extent that this situation contradicts courts' comments to the effect that the *McDonnell* test demands no evidence other than that necessary to make out the three-step test, we believe that rulings subsequent to adoption of the *McDonnell* test in ADEA claims indicate that such evidence is now necessary. Once the employer has offered an explanation of the *prima facie* showing of discrimination, the employee must offer additional evidence—either direct or circumstantial—which tends to show the particular kind of discriminatory nature alleged.

tempted to keep him from the Board "when the personnel board would have the final say on race and age and [Smith] said that he had the final say and it was not true." Holly Dep. at 294.

However, Smith's quoted statement is true; as City Manager he did have the "final say." Contrary to plaintiff's belief, the Board did not have the authority to reverse decisions based upon age, but only those based upon political and religious beliefs or race. If Smith had harbored discriminatory intent based upon age, he had no motivation to prevent plaintiff from access to the Board, aside perhaps from possible embarrassment from Board recommendations. This possibility is outweighed by the fact that plaintiff could have appealed directly to the Board at any time, and Smith knew that plaintiff could so appeal. While a request to Smith and Mayor Rybicki could put the City on notice for due process purposes, *see supra* at 7, in terms of evidence of discriminatory intent, Smith's statement to plaintiff that appeal would be useless, and the Mayor's refusal to become involved do not demonstrate pretext.

■ Ultimately, in an ADEA case, the plaintiff bears the burden of proving discrimination because of age. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093; *Hugh*, 718 F.2d at 242, 243. Plaintiff has admitted that he had no reason to believe that age motivated the defendants up until the moment of his discharge. Holly Dep. at 290 ("Up to the date of my termination, I did not think age had anything to do with it at that point"). Basically, plaintiff claims age discrimination based upon a process of elimination: plaintiff believes that he was performing adequately, so his discharge must have been based upon a different factor; he has chosen to believe that age was that factor. Such conjecture will not survive a summary judgment motion, absent concrete evidence to rebut defendants' legitimate reason for discharge. *See Locke v. Commer-*

*cial Union Insurance Co.*, 676 F.2d 205, 206 (6th Cir.1982); *Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369, 371 (5th Cir.1980). Every piece of evidence plaintiff has produced tends to prove *race* discrimination. Because plaintiff has not presented evidence from which a trier of fact could reasonably infer that age was a determining factor in defendants' employment decision, summary judgment is granted for the defendants as to plaintiff's age discrimination claim.

**CONCLUSION**

For the reasons discussed above, summary judgment for defendants is granted as to plaintiff's due process liberty interest claim, Rehabilitation Act claim and ADEA claim. Summary judgment is denied as to plaintiff's due process property interest claim. To summarize, this leaves plaintiff's claims based upon race discrimination and his due process property interest to be tried. Plaintiff has until March 1, 1985, to amend his complaint to add a defamation claim if he so desires. Defendants are given until March 20, 1985, to answer or otherwise plead to plaintiff's claim, if added. A status hearing is set for March 26, 1985, at 9:30 a.m.