**BELL, BOYD & LLOYD,**
**Plaintiff–Appellee,**

v.

**Jack W. TAPY, Defendant–Appellant.**

No. 89–2975.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 30, 1990.

Decided March 5, 1990.

William L. Barr, Jr., Bell, Boyd & Lloyd, Chicago, Ill., for plaintiff-appellee.

Arnold L. Burke, Siegan, Barbakoff & Gomberg, Chicago, Ill., for defendant-appellant.

Before CUMMINGS and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

This is a diversity suit for breach of contract brought by the Chicago law firm of Bell, Boyd, and Lloyd against a disgruntled client, Jack Tapy, who refused to pay the last $63,000 that the firm had billed him (we round off all figures to the nearest $1,000). The district judge granted the firm's motion for summary judgment and entered judgment in the amount just stated but refused to award postjudgment interest. While not cross-appealing from that refusal, the firm asks us to award it postjudgment interest.

Tapy had in 1986 retained James Collins, then a member of another firm, to represent him in a squabble arising out of the sale of his trucking business. The terms of the agreement were set forth in a retainer letter from Collins to Tapy. The letter stated that Collins would bill for his time at $135 an hour, but that this rate and the rates of the other lawyers and paralegals who would be assigned to the litigation might undergo "modest increases" from time to time. The letter also stated that Tapy could terminate the agreement at will, by written notice. In 1987 Collins joined Bell, Boyd, and Lloyd, but he continued to represent Tapy. By this time he had recovered $650,000 on behalf of Tapy. A year later he had recovered another $450,000, and had also defeated the buyer's counterclaims, which had sought some $2 million from Tapy for securities fraud and other misconduct. For its services, Bell, Boyd, and Lloyd billed Tapy $163,000. He paid $100,000, but—after the lawsuits had terminated successfully—balked at the rest, precipitating the present suit.

The plaintiff attached to its motion for summary judgment a detailed affidavit by Collins explaining that Tapy had agreed to pay reasonable fees for his (and his firms' services), that the fees had been reasonable albeit there had been some increases (much of Collins' time, for example, was billed at $160 an hour), and that Tapy had never expressed dissatisfaction with the services rendered or the results achieved—and of course he had never served a notice of termination. The affidavit also stated that Tapy had complained midway in Bell, Boyd's representation of him that its fees were too stiff, that as a result of this complaint the parties had held a meeting in March 1988 at which the firm had agreed to certain discounts for the January, February, and March billings, and that these discounts had been duly allowed.

Tapy countered Collins' affidavit with one of his own. Tapy's affidavit is brief. It contains little that contradicts any *material* assertions in Collins' affidavit, but does state that "so far as can be determined all discounts promised as a result of complaints were not credited to him. At least $18,000 in discounts which were promised were never credited to his [Tapy's] account." Tapy's affidavit also states that he had complained about "being billed $13,000 for file reorganization," and that although Collins had advised Tapy that if the litigation over the sale of the trucking company went to trial the additional bill would be no more than $50,000, the case had been settled ahead of trial, and nevertheless Collins had billed him an additional $59,000. Local Rule 12(m) of the Northern District of Illinois—the validity of which Tapy does not question—requires a party opposing a motion for summary judgment to file, in addition to the evidentiary materials required by Rule 56(e), a response listing the factual assertions by the movant with which the opponent disagrees. The list must be backed up with specific references to the evidentiary materials relied on and must set forth any additional facts that require denial of summary judgment, also backed up with specific references to the record. Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted. On the basis of this rule, the district judge granted summary judgment. We must decide whether the judge applied the rule correctly.

■ Standing alone, Tapy's affidavit would be sufficient to create genuine is-

sues of material fact concerning Bell, Boyd's performance of its promise to give discounts, the reasonableness of the fee for reorganizing Tapy's file, and the reasonableness of the fees incurred in negotiating the settlement, since the legal expense of a settlement is ordinarily much less than that of a trial (this is a major reason most cases are settled). Judge Norgle did not disagree. His ground for granting the motion for summary judgment was not civil rule 56 but local rule 12(m). A local rule of a federal district court is written by and for district judges to deal with the special problems of their court, and we are disposed therefore to give a district judge's interpretation of his court's local rules, when not in conflict with the interpretation of any other district judge, considerable weight.

▇ So let us take a look at Tapy's Rule 12(m) response to the motion for summary judgment. Much of it either admits facts asserted by Bell, Boyd or takes issue with immaterial factual assertions. Beyond that, "Tapy denies that the fees were reasonable," but as there is no reference to supporting materials, this statement has no standing under Rule 12(m). The response then lists the additional facts that require denial of summary judgment. Many of the listed facts are irrelevant, such as: "Collins did not bill at the rate of $135.00 per hour." Collins never agreed to bill at that rate—that was just his starting rate. At last approaching the point, the response states that Tapy objected to excessive time being spent on various matters, including the following: "records submitted so far as they can be understood indicate billing of $13,-000 for reorganization of Collins' file." Although all the records relating to the billing of Tapy had been attached to Collins' affidavit, Tapy's response does not cite a single one of these records to substantiate his claim (vehemently denied by Collins) that Collins billed Tapy $13,000 to reorganize the file. Next Tapy asserts correctly that "the cost of settling was more costly than trial would have been," but he does not assert that the cost of settling was excessive in relation to time spent or results achieved and cites no evidentiary materials from which an inference of such excessiveness might be derived. And finally he asserts that "about $18,000 of promised discounts were not given." Again no reference is given, although this time it is plain that the reference is to his affidavit. But the affidavit is heavily hedged. The prefatory clause in the relevant passage in the affidavit—"so far as can be determined" implies that the real meaning of Tapy's assertion about the $18,000 is not that he knows that Collins broke his promise but that he cannot determine from the records attached to the affidavit whether all the discounts promised him were actually credited to his account. This is not an adequate response to Collins' positive assertion made under oath that all promised discounts were duly credited to the account.

Tapy's response violated the rigorous requirements of specificity and documentation that Rule 12(m) imposes. One might quarrel with the rigor, but Tapy does not; and such an argument could be countered by pointing to the exigent need of the district courts, in a period of unprecedented caseloads, to streamline their procedures. We spoke approvingly of Rule 12(m) (formerly 12(f)) in *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989); cf. *Richardson v. Bonds*, 860 F.2d 1427, 1433 n. 7 (7th Cir.1988). We are not aware of adverse comment. It is true that some district judges are more forgiving of violations of the rule than others. Compare *Harbin v. Sun Life Assurance Co.*, 710 F.Supp. 1167, 1168 (N.D.Ill.1989), with *Aetna Casualty & Surety Co. v. Spancrete, Inc.*, 726 F.Supp. 204, 206 (N.D.Ill.1989). Or perhaps we should say district judges are more forgiving of such violations at some times than at other times, for it was the same judge in *Harbin* and *Aetna*. But even assuming that a district judge has discretion not to enforce Rule 12(m) to the hilt, we certainly cannot say that Judge Norgle abused that discretion in enforcing it in this case. This is a collection suit, and such suits are notable for defendants' resort to tactics of evasion and delay. The rigor of Rule 12(m) is well calculated to winnow the wheat from the chaff in the

defense of such suits. Tapy has conceded the essential elements of the law firm's suit—that he agreed to pay it for its services at its regular rates and that those services were performed as agreed with excellent results. The rest is carping and nit-picking.

■ The issue of postjudgment interest remains to be addressed. In its motion for summary judgment, the law firm asked for postjudgment interest. The request was superfluous, *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 230 (7th Cir. 1990), and in retrospect foolish. Section 1961(a) of the Judicial Code entitles the prevailing plaintiff in a federal suit (including a diversity suit) to postjudgment interest at a rate fixed in the statute, whether or not there is an award of interest in the judgment, *Clifford v. M/V Islander*, 882 F.2d 12, 14 (1st Cir.1989), or even a request for interest in the complaint. Fed.R.Civ.P. 54(c); 10 Wright, Miller & Kane, Federal Practice and Procedure § 2664, at pp. 159–60 (2d ed. 1983). Judge Norgle denied the request because the firm had failed to cite the statute. We do not agree with this disposition. Nothing in any local or other rule forfeits a statutory entitlement because of failure to mention the statute, and section 1961(a) allows the judge no discretion to deny the interest authorized by that section. *Water Technologies Corp. v. Calco Ltd.*, 714 F.Supp. 899, 910 (N.D.Ill.1989). Judge Norgle was of course well aware of the statute; he denied the request for postjudgment interest because of the failure to cite the statute without any prompting from the defendant. So the omission of the citation was not a material omission, and it should not lead to a forfeiture.

■ Does it make a difference that Bell, Boyd failed to file a cross-appeal? We think not. We reject the facile suggestion (our own—not Bell, Boyd's) that since an award of postjudgment interest does not modify the judgment, *Lorenzen v. Employees Retirement Plan, supra*, 896 F.2d at 233, and since a cross-appeal is necessary and proper only when the prevailing party wants to modify the judgment, reversal of the denial of postjudgment interest would not change the district court's judgment. This is wrong because the judgment of the district court contains as one element a denial of Bell, Boyd's entitlement to postjudgment interest. However, because of Rule 37 of the Federal Rules of Appellate Procedure, no cross-appeal from a refusal to award postjudgment interest is necessary. That rule entitles the court of appeals to award a party whatever interest he may be entitled to under law, in this case section 1961(a). Rule 37 is the route by which Bell, Boyd has chosen to bring us its request for postjudgment interest. We shall grant its request, while reminding it and other litigants in federal courts that *they are simply inviting trouble for themselves* by filing postjudgment motions in advance of judgment. We deny Bell, Boyd's motion for Fed.R.App.P. 38 attorney's fees and costs in this court; Tapy's appeal has failed, but it was not frivolous.

The judgment is affirmed except insofar as it denies postjudgment interest, the appellee's rule 37 motion is granted, its rule 38 motion is denied.