Joseph F. TENNES, Plaintiff,

v.

The COMMONWEALTH OF MASSA-CHUSETTS, DEPARTMENT OF REVENUE, et al., Defendants.

No. 88 C 3304.

United States District Court, N.D. Illinois, E.D.

May 31, 1990.

**1354**

Brian Steinbach, James R. Cox, Anthony S. Graefe, Naphin, Banta & Cox, Chicago, Ill., for plaintiff.

Philip C. Stahl, Lynn H. Murray, Grippo & Elden, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff Joseph Tennes is a former employee of the Commonwealth of Massachusetts at the Chicago regional office of its Department of Revenue ("the Chicago office"). The Chicago office is primarily involved in conducting tax audits and insuring compliance with Massachusetts tax laws by out-of-state corporations doing business in Massachusetts. The Chicago office audits corporations in the midwest.

Tennes began working for the Commonwealth in 1983. The Commonwealth fired him in 1986 at the age of 58. In his complaint, Tennes alleges that the firing violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA" or "the Act"). Tennes contends that his direct supervisor, audit chief Donald Lamb, harbored age bias and influenced the decision to fire him. Two other individuals made the decision to fire Tennes: multi-state chief Bernard Crowley, Lamb's immediate supervisor, and deputy commissioner Stephen Shiffrin. Crowley made the initial decision to fire Tennes. Shiffrin held a hearing on the issue of Tennes' discharge and refused to reinstate him.

At trial, Tennes prevailed under the ADEA against defendants the Commonwealth of Massachusetts, and Stephen W. Kidder, the Commissioner of the Department of Revenue (collectively "the Commonwealth"). On January 25, 1990, the court entered judgment on the jury verdict that the Commonwealth violated the ADEA. The Commonwealth moves for judgment notwithstanding the verdict and, in the alternative, for a new trial. Tennes moves to amend the judgment order to include back pay in the amount of $124,497.76, liquidated damages of an additional $124,497.76, reinstatement, and injunctive relief. Finally, Tennes petitions for his attorneys' fees and costs.

### I. The Commonwealth's Motion for Judgment Notwithstanding The Verdict

The Commonwealth moves for judgment notwithstanding the verdict pursuant to Fed.R.Civ.P. 50(b). In ruling on the motion, the evidence and all reasonable inferences that may be drawn from that evidence must be viewed in a light most favorable to Tennes. *Cygnar v. City of Chicago,* 865 F.2d 827, 834 (7th Cir.1989).

### A. *The Jury Finding of Pretext*

Using an indirect method of proof first established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and reaffirmed in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), Tennes was required to establish a prima facie case of age discrimination by proving:

1) Tennes was in the protected age group (40 or older);

2) Tennes' job performances met the Commonwealth's legitimate expectations;

3) despite his performance, he was discharged; and

4) the Commonwealth sought a replacement for him from outside the protected age group.

*See, e.g., La Montagne v. Am. Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). If Tennes met this burden, the Commonwealth could avoid liability by demonstrating that the true reason for the discharge was a legitimate business reason. *Young v. Will County Dep't of Public Aid,* 882 F.2d 290, 293 (7th Cir.1989). The Commonwealth has the burden of production, but the burden of persuasion rests with Tennes. *La Montagne,* 750 F.2d at 1409. If the Commonwealth articulated some legitimate nondiscriminatory reason for the discharge, the burden shifted to Tennes to prove by a preponderance of the evidence that the reasons offered by the Commonwealth were a pretext for discrimination. *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 20 (7th Cir.1987).

In its answers to special interrogatories, the jury concluded that Tennes was meeting his employer's reasonable expectations. The jury concluded that age was a determining factor in Tennes' termination. In addition, the jury found that the Commonwealth's stated reasons for discharging the plaintiff—poor performance and failure to be at his job or explain his whereabouts on August 7 and 8, 1986—were a mere pretext for age discrimination.

■ The Commonwealth asserts that the jury could not reasonably conclude that the reasons for the firing were a pretext for age discrimination. In order to infer pretext, the jury necessarily concluded (1) that Lamb criticized Tennes on the basis of Tennes' age, and (2) that the decisions made by Crowley or Shiffrin were based, at least in part, on misleading or distorted information provided by Lamb. The Commonwealth contests both of these conclusions.

### 1. Evidence of Lamb's age-bias

Statements by Lamb are the basis of liability in this action. Lamb made disparaging remarks to the effect that Tennes was too old for his job, that he should color his hair, that he was losing his memory, that his sexual ability was probably impaired, among others. Lamb criticized Tennes for unsatisfactory performance in four memoranda entitled "formal corrective action" ("the corrective memoranda"). Tennes asserted at trial that Lamb's criticisms were insignificant or false.

The Commonwealth contends the jury could not reasonably infer that Lamb was biased against Tennes because of his age. The Commonwealth argues that Lamb issued favorable evaluations of Tennes contemporaneously with his age-related remarks. Only after Tennes complained about Lamb's age-related remarks did Lamb criticize Tennes' job performance. The Commonwealth asserts that these circumstances cannot support an inference of age-bias.

In order to prove that the Commonwealth's stated reasons for his firing were pretextual, Tennes had to prove that the reasons were false and provide some proof of motive and intent to discriminate on the basis of age. *Holly v. City of Naperville,* 603 F.Supp. 220, 230 n. 4 (N.D.Ill.1985). Tennes provided evidence that Lamb's criticisms were unfounded. The jury could reasonably infer that Lamb's age-related remarks reflected his state of mind regarding Tennes' age. The alleged discriminatory action—the corrective memoranda and the firing—took place after Tennes asked Lamb to stop making age-related remarks. The jury could infer that Lamb stopped making overt discriminatory statements while committing discriminatory acts. Statements prior to the corrective memoranda and the firing are a reasonable indication of Lamb's motive and intent.

The Commonwealth asserts that undisputed facts adduced at trial defeat any inference of discriminatory intent. Tennes testified that most auditors in the Chicago office joked about his age. Even before Lamb joined the Chicago office, Tennes would answer greetings by stating that he was "not old for a bad man" or "not bad for an old man." However, the evidence suggested that Lamb's comments were unsolicited and sarcastic.

The Commonwealth asserts that after the alleged falling out between the two

men, Lamb continued to treat Tennes equitably. Lamb invited Tennes to his home and defended Tennes' work on occasion. In rebuttal, Tennes pointed out that Lamb received a critical evaluation from a supervisor. Lamb praised the work of his staff, including Tennes, in response to the criticism. Lamb gave Tennes time off when Tennes' wife was ill, but Tennes claimed that he was automatically entitled to sick leave. The circumstances of Lamb's age-related statements and unsupported criticism permit the jury's conclusion that Lamb maintained an age-related bias.

The Commonwealth points out that at the time Tennes received critical memoranda from Lamb, Tennes did not believe the memoranda reflected age discrimination. After Tennes allegedly missed work without justification, Lamb supposedly asked for suspension rather than discharge. After the discharge, Tennes believed Lamb was sincere and sympathetic. Tennes did not initially conclude that he was the victim of age discrimination.

However, Tennes' claim of age discrimination is not based upon a process of elimination. *See, Holly,* 603 F.Supp. at 232. Tennes offered substantial evidence that he received disparate treatment. Viewing inferences in Tennes' favor, other auditors received less severe disciplinary action than Tennes when they failed to complete assignments, arrived at work late or left work early. Lamb wrote the corrective memoranda after Tennes asked Lamb to curb his age-related remarks. Tennes presented evidence that Lamb's complaints were vague, insignificant or unsupported. In addition, after Tennes was fired, Lamb prepared and circulated an "affidavit" for signature by co-workers stating that Lamb had never made age-related remarks. Many auditors refused to sign the document. Lamb's behavior permits an inference that after Tennes was fired, Lamb attempted to conceal his age-biased motivation.

## 2. Decisions by Crowley and Shiffrin

Crowley's decision to fire Tennes was influenced by Lamb's input. Crowley admitted that he considered information supplied by Lamb when he determined to fire Tennes. Lamb's contribution included (1) the corrective memoranda; (2) the report that Lamb had tried to call Tennes on August 7, 1986; and (3) reports about the incident of Tennes' absence on August 7 and 8, 1986. Tennes provided evidence that these reports were false or insignificant. The jury was entitled to conclude that Lamb's information influenced Crowley's decision to fire Tennes. The Commonwealth argues that Crowley made objective findings contributing to his decision to fire Tennes. However, the jury could reasonably conclude that Crowley's "objective findings" were not the sole determining factor behind the firing. *See, La Montagne v. Am. Convenience Products,* 750 F.2d 1405, 1415 (7th Cir.1984) (Even if employer's proffered reasons for discharge have some basis in fact, the reasons are a pretext if they are jointly insufficient to motivate the discharge).

Shiffrin's actions were similarly influenced by Lamb's input. First, Crowley spoke with Shiffrin about the reasons for the firing. Shiffrin saw the corrective memoranda written by Lamb and listened to Tennes' explanation of the circumstances. In addition, Tennes informed Shiffrin that age discrimination may have played a role in the firing, but Shiffrin took no action to investigate Tennes' allegations. Shiffrin may have relied on the credibility of Crowley and Lamb in assessing the appeal. The jury could reasonably conclude that the entire termination process was tainted by Lamb's false or distorted criticism of Tennes.

The jury could reasonably infer that Lamb's corrective memoranda and other criticism influenced both Crowley's and Shiffrin's decisions to discharge Tennes. Lamb's age-related remarks reflected an age-bias that motivated Lamb to issue the corrective memoranda.[1] Consequently, the

---

1. The Commonwealth was granted leave to cite new authority in support of its motion, *McDonald v. Union Camp Corporation,* 898 F.2d 1155 (6th Cir.1990). The age-related remarks in *McDonald* were admissible and raised an inference of discrimination sufficient to satisfy a

jury could reasonably infer that Tennes would not have been fired but for his age. *See, Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359 (7th Cir.1988).

### 3. Conclusion

The jury could reasonably infer that Lamb issued disciplinary memoranda and other reports to his superiors for discriminatory reasons. The jury could also infer that Lamb's reports contributed to Crowley's decision to fire Tennes and Shiffrin's decision to deny reinstatement. Accordingly, the finding of pretext by the jury may not be overturned on the Commonwealth's motion for judgment notwithstanding the verdict.

### B. *The Jury Finding of Willful Violation of the ADEA*

■ Under the ADEA, Tennes is entitled to liquidated damages if he establishes that the Commonwealth's age discrimination was willful. 29 U.S.C. § 626(b). *See, Brown v. M & M/Mars,* 883 F.2d 505, 512 (7th Cir.1989). Discrimination is willful only if the Commonwealth "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* The following special interrogatory was submitted to the jury:

> Do you find the plaintiff has proven, by a preponderance of the evidence that the defendant either *knew or showed reckless disregard* for whether its decision to discharge the plaintiff violated the Age Discrimination in Employment Act?

The jury responded, "yes." The Commonwealth maintains that no evidence supports the jury's finding of willfulness.

Lamb initiated the firing by contacting Crowley. Lamb subsequently informed Tennes that he and Crowley had decided to terminate him. Tennes does not contend that Crowley was aware of the possibility that age discrimination played a role in Lamb's criticism of Tennes when Crowley decided to terminate Tennes. Consequent-

ly, Crowley's actions cannot be the basis for the jury finding of willful violation of the ADEA.

The jury could reasonably infer that Shiffrin's actions were willful. Tennes contended at trial that Shiffrin was aware of the possibility that age had played a factor in the firing when he conducted a hearing on Tennes' discharge. In his appeal letter, Tennes stated that age disparaging remarks had been made concerning him and that he was the oldest person in the office. Pl.Ex. 114. Tennes also stated that Lamb had falsified the record. At the hearing, Shiffrin played with a rubber band, took no notes, and never asked Lamb to respond to Tennes' allegations of discrimination. Viewing the inferences in favor of Tennes, the jury was entitled to conclude that Shiffrin's behavior showed reckless disregard as to whether the firing of Tennes violated the ADEA.

The Commonwealth complains that in closing, plaintiff's counsel argued that Shiffrin "should have known" that his actions in refusing to to reinstate Tennes were in violation of the ADEA. The "should have known" language is not the correct standard for willfulness. Tennes' counsel does not recall using the improper language and the parties have not provided the court with a transcript. However, even if counsel for Tennes had used language reflecting an incorrect legal standard, the Commonwealth apparently made no objection and made no effort to correct the misstatement in its own closing. The court cautioned the jury on several occasions that the court (and not the attorneys) would instruct the jury on the applicable law after closing arguments. The jury instruction given and the special verdict form each contained the correct standard. The court may reasonably assume the jury followed its instructions. Consequently, any misstatement of law by Tennes' counsel was

---

*prima facie* case. However, the defendant-employer produced a legitimate, nondiscriminatory reason for discharging McDonald: documented deficiencies over a sixteen year period. Moreover, McDonald acknowledged that he was not performing to his employer's satisfaction,

and thus summary judgment was appropriate. Unlike Tennes, McDonald did not offer any evidence to show that the ultimate decisionmaker considered any allegedly false or distorted information supplied by McDonald's direct supervisor, who had made age-biased remarks.

harmless. The Commonwealth's motion for judgment notwithstanding the verdict on the jury finding of willfulness is denied.

## II. The Commonwealth's Motion for a New Trial

### A. *The Clear Weight of the Evidence*

The Commonwealth moves for a new trial pursuant to Fed.R.Civ.P. 59(a). The court may grant a new trial if it finds that the verdict is against the clear weight of evidence. *Forrester v. White*, 846 F.2d 29, 31 (7th Cir.1988). A new trial may be granted even when judgment notwithstanding the verdict is inappropriate. *Roebuck v. Drexel University*, 852 F.2d 715 (3rd Cir.1988). The Commonwealth argues that on several issues the jury drew inferences against the clear weight of the evidence.

#### 1. The events of August 7–8, 1986

■ An employer that is mistaken about its reasons for firing an employee—but honestly believes those reasons—does not violate the ADEA. *Brown*, 883 F.2d at 509. The Commonwealth asserts that objective reasons justified the decision to discharge Tennes and that Tennes failed to explain what happened on a business trip to Detroit in August 1986. The Commonwealth argues that in order to find for Tennes, the jury must have determined that Crowley had no reason to doubt Tennes' explanation of his whereabouts on August 7–8, 1986.

The week of August 4, 1986, Tennes was in the Detroit area conducting field audits. Tennes had scheduled a return flight to Chicago for August 8. At trial, Tennes claimed that on August 7, 1986, he called another auditor at the office. He then sought out a taxpayer's tax manager to obtain clarification of certain transactions. The tax manager was at lunch and did not return until 2 p.m. Detroit time. Tennes met with the tax manager that afternoon. Tennes testified that he could not catch the evening flight to Chicago on August 7 and he was already obligated to pay for his hotel room, so he decided to spend the night in Detroit.

On August 8, Tennes made unsuccessful attempts to contact another taxpayer. He checked out of his hotel right after breakfast, but he continued to work in the hotel room that morning. He returned his rental car and returned to Chicago on his previously scheduled flight. Lamb and another supervisor claim that they tried to locate Tennes without success. They claim that when they called the hotel on the morning of August 8, they were told that Tennes was gone and that the hotel bill showed no telephone calls on August 8. Tennes responded that the hotel mistakenly concluded he had left because he had checked out. He argued that the hotel bill did not reflect local telephone calls made after he checked out. The jury apparently chose to believe Tennes.

The Commonwealth asserts that even if Tennes' story is true, Crowley had sufficient reason to doubt his whereabouts on August 7 and 8 to justify his decision discharging Tennes. However, Crowley's decision to disbelieve Tennes' account of the events of August 7 and 8 is not dispositive. The evidence showed that Crowley based his decision to fire Tennes on the corrective memoranda, Tennes' alleged insubordination and overall performance, as well as the events of August 7 and 8. Through the corrective memoranda, Lamb's demonstrated age-bias arguably influenced Crowley's decision to fire Tennes. Thus, the jury could conclude that age was a determining factor in Tennes' discharge.

In addition, Crowley was not the only decisionmaker. The Commonwealth concedes that both Shiffrin and Crowley decided to terminate Tennes. Shiffrin had the benefit of the appeal letter Tennes submitted. Pl.Ex. 114. In the appeal letter, Tennes raised the issue of age discrimination. Without investigating these charges, Shiffrin affirmed Crowley's decision. The jury could conclude that Shiffrin's decision was merely a rubber stamp approval of the prior determination that was based on Lamb's age discrimination.

Tennes presented evidence that the events of August 7 and 8 were not the sole determinative factors in his firing. As de-

scribed above, the jury was entitled to lend little credence to both Crowley's and Shiffrin's stated reasons for the firing. Consequently, the jury's resolution of the events of August 7 and 8 does not require a new trial.

### 2. Age Related Remarks

The Commonwealth argues that Lamb's age-related remarks are not evidence of age bias. The Commonwealth maintains the comments were good-natured and common among auditors. However, unlike comments made by co-workers, Lamb's remarks reflected a hostile and sarcastic tone. After Tennes asked Lamb to stop the comments, retaliatory action began. Most importantly, Tennes provided evidence that Lamb's corrective memoranda were false and reflected disparate treatment. These complaints influenced Crowley's decision to fire Tennes and Shiffrin's decision to deny reinstatement.

### 3. The Corrective Memoranda

The Commonwealth asserts that Tennes' explanation of the corrective memoranda is inherently unbelievable. According to Tennes, the incidents described (1) actually occurred but were not serious violations of office policy; (2) related to procedures that were unnecessary; or (3) were not his fault. The jury apparently chose to believe Tennes' explanation of these events. The jury's decision to accept Tennes' explanation was not against the clear weight of the evidence. The jury apparently found Tennes to be a credible witness. The Commonwealth offers no reason to overturn a determination that was exclusively within the jury's province.

### B. *Evidentiary Rulings*

■ The Commonwealth contends that the jury relied upon inadmissable evidence to reach its verdict. The Commonwealth argues that Lamb's age-related remarks should not have been admitted because the alleged discriminatory action occurred after Lamb stopped making the remarks. However, the age-related remarks reflected Lamb's state of mind. Although Lamb stopped making the remarks prior to writing the corrective memoranda, the remarks

provide some evidence of motive and intent to discriminate on the basis of age. *Holly v. City of Naperville*, 603 F.Supp. 220, 230 n. 4 (N.D.Ill.1985). Consequently, these remarks were relevant, probative, and admissible under Fed.R.Evid. 402 and 403.

■ The Commonwealth also complains that Tennes was permitted to introduce exhibits reflecting the Chicago office employment history. Pl.Exs. 101–03. The Commonwealth argues that these exhibits failed to show a statistically significant pattern of discrimination, they failed to distinguish between terminations and resignations, and they lacked probative value. Tennes claims that these exhibits were not offered to establish a pattern of discrimination, but to aid the jury's understanding of otherwise confusing employment data and testimony.

The Commonwealth suggests that these exhibits led the jury to infer a pattern of discrimination or to infer that older employees had been terminated when they had in fact resigned. The Commonwealth did not request a limiting instruction when these exhibits were introduced over its objection. However, the jury instructions addressed the individual treatment afforded Tennes. Tennes did not advance the theory that a pattern of discrimination occurred at the Chicago office, and there is no reason to assume the jury adopted this theory. Failure to limit the use of the office employment data was harmless. Accordingly, the Commonwealth's motion for a new trial is denied.

### III. Tennes' Motion to Amend the Judgment Order

Tennes filed a timely motion to amend the judgment order pursuant to Fed.R. Civ.P. 59(e). He seeks back pay, liquidated damages, reinstatement, lost benefits, post-judgment interest, and an injunction prohibiting the Commonwealth from discriminating against him on the basis of age.

### A. *Back Pay and Liquidated Damages*

■ The Commonwealth stipulates that, absent this court's entry of judgment not-

withstanding the verdict or reversal of the judgment by the court of appeals, the jury's verdict entitles Tennes to recover $124,497.76 in back pay and an equal amount in liquidated damages. Accordingly, the court shall amend judgment to include those amounts.[2]

### B. *Reinstatement, Front Pay and Injunctive Relief*

Tennes seeks reinstatement to his former position as an auditor in the Chicago office, along with restoration of all accrued employee benefits. Alternatively, he requests front pay with the present cash value of all employee benefits, assuming his retirement at the age of 65. Reinstatement and front pay are not automatically mandated alternative forms of equitable relief for a prevailing plaintiff under the ADEA. The decision whether to reinstate or to award front pay is addressed to the sound discretion of the trial judge after careful consideration of the particular facts of the case and the parties' relationship.

■ If the relationship between the parties is hostile and there is no reason to believe that Tennes and the Commonwealth would enjoy a productive and amiable working relationship, reinstatement is not appropriate. *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir. 1986). The court finds that is the situation here. Even though the jury credited Tennes' testimony, there was also credible evidence that Tennes' performance as a tax auditor was marginal and that he would not enjoy the confidence or respect of current management.[3] A field auditor must work with taxpayers in an unsupervised atmosphere. The Commonwealth must be able to rely on the good judgment, competency and integrity of its field auditors. The current deputy commissioner of the Department of Revenue testified that he believed Tennes was dishonest with his supervisors and was a marginal performer. His doubts about Tennes' ability and hones-

ty appeared sincere to the court. Moreover, Tennes admitted at trial that he did not consistently follow his employer's operating procedures. Under these circumstances, reinstatement is inappropriate.

■ Front pay should be awarded where needed to effectuate the purposes of the ADEA. *McNeil*, 800 F.2d 118; *Pudge v. Fruehauf Corporation*, 690 F.Supp. 692, 694 (N.D.Ill.1988). If the jury has awarded liquidated damages, front pay may be deemed unnecessary. *Id.* The jury's verdict entitles Tennes to both back pay and liquidated damages. This amount is substantial, particularly in view of Tennes' relatively short term of employment with the Commonwealth, his weak employment history and his failure to aggressively seek comparable employment. An award of nearly $250,000 is satisfactory to effectuate the purposes of the ADEA.

Tennes' request for injunctive relief is moot, since he shall not be reinstated to his former position.

### C. *Post–Judgment Interest*

■ Tennes seeks post-judgment interest on his award of back pay and liquidated damages. He is clearly entitled to recovery of post-judgment interest. 28 U.S.C. § 1961(a); *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101 (7th Cir.1990).

## IV. Tennes Petition for Attorneys' Fees and Costs

### A. *Attorneys' Fees*

■ As the prevailing party, Tennes is entitled to an award of reasonable attorneys' fees under the ADEA. 29 U.S.C. §§ 626(b) and 216(b). Tennes petitions for $99,307.50 in attorneys' fees over the course of his almost four-year dispute with his former employer. The Commonwealth vigorously disputes the hourly rates, the time billed and the format used in the fee petition.

---

**2.** Tennes also seeks post-judgment back pay. He does not cite authority for such an award. There appears to be no basis in law or equity for this request. It is denied.

**3.** Lamb and Shiffrin are no longer employed by the Commonwealth.

Tennes' primary counsel—and only trial attorney—was Brian Steinbach, a senior associate in the eight-person law firm of Naphin, Banta & Cox ("the Naphin firm"). The Naphin firm specializes in labor and employment law. Mr. Steinbach was a member of the Order of the Coif at the University of Virginia Law School, and he is a former law clerk to the Chief Judge of the United States District Court for the District of Rhode Island. Mr. Steinbach spent seven years with the National Labor Relations Board as a trial attorney and as counsel to members of the Board. For the past four years, he has been the senior associate at the Naphin firm, where he has concentrated on employment discrimination and labor law. Since 1989, Mr. Steinbach's normal billing rate has been $150 an hour, the rate he seeks for his services in this case.

The Commonwealth asserts that Mr. Steinbach should be compensated at the rate of only $135 an hour for his services as lead counsel merely because he is an associate and not a partner in the Naphin firm.[4] This argument glorifies form over substance. Mr. Steinbach, an attorney with eleven years of concentrated experience in labor law, functioned as Tennes' principal—and for the most part his only—counsel in these proceedings. This was a hotly contested case on both the facts and the law. There were a significant number of pretrial, trial and post-trial disputes that Mr. Steinbach handled competently and effectively. For the past year, and throughout the five-day trial, the Commonwealth has been represented by *two* attorneys from a larger firm.[5] Early in this litigation, Tennes was awarded attorneys' fees as a result of the Commonwealth's failure to respond to discovery. At that juncture, the Commonwealth did not contest Mr. Steinbach's $150 an hour billing rate.

Under all these circumstances, the court finds that $150 an hour is a fair and reasonable rate, and that rate is in accord with billing rates for comparable legal services in this community. *See Pudge,* 690 F.Supp. at 696, and cases cited therein. Similarly, Tennes' use of a $150 an hour billing rate for the limited amount of work done by Naphin partners Anthony S. Graefe, whose usual billing rate is $150 to $175 an hour, and James R. Cox, whose normal billing rate is $150 to $200 an hour, is fair and reasonable. Eugene A. Boyle, a Naphin associate who only did half an hour's work on this matter, appropriately uses a rate of $125 an hour for the fee petition; his usual billing rate is $125 to $135. The Commonwealth does not challenge the $40 an hour billing rate for a paralegal's assistance.

The Commonwealth further attacks Tennes' fee petition as consisting of little more than the "stack[ing of] a pile of time sheets on the bench for the district court to analyze," in violation of the standards recently set in *FMC Corporation v. Varonos,* 892 F.2d 1308, 1317 (7th Cir.1990). This court is unhappily familiar with the inadequate fee petition submitted in the *FMC* case. There, FMC literally submitted a stack of computer printouts containing raw billing records that it failed to explain or justify; FMC failed to adequately identify the half dozen attorneys whose services were billed, their experience or their role in the case; and FMC included billings for time spent on unsuccessful motions and unnecessary work in a case resolved by default judgment before the parties were even at issue.

4. *The Commonwealth also advocates a two-tiered billing rate for Mr. Steinbach: $135 an hour for his functions as "lead counsel" and $105 an hour for tasks the Commonwealth denigrates as more appropriate for a junior associate or a paralegal (for example, abstracting depositions, research, drafting discovery requests, and preparation of trial exhibits). The Commonwealth presumes that work allocation practices common to large law firms should be imposed on an eight-person firm with limited resources. The court finds the Commonwealth's proposed reallocation of Mr. Stein-*bach's work, with the attendant impact on his billing rate, arbitrary and inappropriate given the complex nature of the factual and legal issues involved and Mr. Steinbach's professionalism and effectiveness as a well-prepared advocate.

5. For the first year of this litigation, the Commonwealth was represented by *three* attorneys from the firm of Mayer, Brown and Platt, one of the larger and most prominent law firms in Chicago.

Tennes' fee petition is not remotely comparable to the FMC morass. Descriptions of work performed on specific dates are adequate to enable the court to evaluate the necessity of the work performed and the reasonableness of the time billed. Time allocations are broken down to one-quarter of an hour. In some instances, a number of tasks are lumped together in a multiple-hour period. This practice is not conducive to clear and accurate evaluation. However, these entries were generally made in connection with trial preparation by Mr. Steinbach, Tennes' principal attorney, while he was working full time on this case just before and during trial. These records adequately enable the court to determine whether the consolidated times indicated are reasonable. *Pudge*, 690 F.Supp. at 696.

■ The Commonwealth challenges time spent for legal services before the complaint was filed. The Commonwealth contends that Tennes is not entitled to attorneys' fees for counseling him before his appearance at the appeal hearing with Shiffrin and for preparing related documents. The Commonwealth further contests Tennes' right to attorneys' fees for services rendered during the investigation and processing of Tennes' discrimination charge by the Equal Employment Opportunities Commission ("the EEOC"). Several cases are cited by the Commonwealth in support of its argument that services in connection with an EEOC hearing are not compensable under the ADEA. *Dominic v. Consolidated Edison Co. of New York, Inc.,* 652 F.Supp. 815, 822 (S.D.N.Y.1986) (Congress did not intend prelitigation fees to be recoverable under the ADEA), *aff'd on other grounds,* 822 F.2d 1249 (2d Cir. 1987); *Kennedy v. Whitehurst,* 690 F.2d 951 (D.C.Cir.1982);[6] *Koyen v. Consolidated Edison Co. of New York, Inc.,* 560 F.Supp. 1161, 1170 (S.D.N.Y.1983) (prelitigation fees incurred in EEOC proceedings not recoverable under the ADEA). The

Commonwealth neglects to cite *Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 282–83 (2d Cir.1987). In *Reichman,* the Second Circuit expressly rejected the district court's declination in *Koyen* to award fees under the ADEA, holding instead that,

> Since Congress specifically authorized fee awards for private plaintiffs under the ADEA, and required that those plaintiffs at least give administrative proceedings a chance before commencing an action in federal court, we conclude that Congress intended a fee award under the ADEA to cover time spent on administrative proceedings that were a prerequisite to the action. (Citation omitted).

*Id.* at 283. *See also New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) (Title VII of the Civil Rights Acts allows recovery of attorney's fees for legal services performed in state administrative proceedings); *Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541, 1544–45 (11th Cir.1988) (finding "strong case" for awarding fees arising from state and EEOC prelitigation proceedings, but declining to reach the issue).

This court is persuaded that an award of reasonable prelitigation fees is consistent with the legislative goals of the ADEA and encourages serious attempts to resolve issues relating to discrimination in the workplace before the EEOC and state agencies. Moreover, the time spent by Tennes' counsel in advising him during his administrative appeal and in handling his EEOC complaint inherently overlap with the factual inquiry and research necessary under Fed. R.Civ.P. 11 before this action was filed.

■ The Commonwealth also disputes an award of attorneys' fees for negotiation of a contingent fee arrangement, for having two attorneys attend conferences relating to possible settlement and discovery disputes (even though the Commonwealth consistently utilized at least two attorneys throughout these proceedings) and for preparing the fee petition. The court finds

---

**6.** The Commonwealth's citation of *Kennedy* is inappropriate. There, the court ruled that a federal employee whose ADEA claim was resolved solely through administrative process could not recover attorneys' fees under the

ADEA. 690 F.2d at 966. The *Kennedy* court expressly declined to apply its ruling to non-federal employees seeking compensation under the ADEA for legal services performed at the administrative level. *Id.*

that these tasks were necessary and that the time and staffing allocated are reasonable.

Tennes prevailed on the critical issues raised in this case. His unsuccessful claims for front pay and injunctive relief cannot be viewed as discrete and separate claims, but rather involve "a common core of facts ... based on related legal theories." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Accordingly, Tennes is entitled to a fully compensatory fee award in the amount of $98,857.50 ($99,307.50 less $450 for three hours spent by Mr. Steinbach in preparing the unsuccessful front pay portion of the motion to amend judgment).

### B. *Costs*

 Tennes is also entitled to costs under Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1920, as well as out-of-pocket expenses for which attorneys normally bill their clients separately. *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984); *Bennett v. Central Tel. Co. of Illinois*, 619 F.Supp. 640, 655 (N.D.Ill.1985). Tennes has submitted a bill of costs, as well as additional out-of-pocket expenses with his petition for attorneys' fees. The Commonwealth objects to the bill of costs, but has not interposed any objections to supplemental out-of-pocket expenses totalling $1,296.66 for travel to take a deposition, long distance telephone calls, photocopying and post-trial computerized legal research. The court finds these undisputed costs reasonable and necessary.

The disputed items in the bill of costs include $154.00 for special process service, $302.50 for a deposition transcript of the testimony of Barbara Wilke, photocopying expenses of $2,014.37 and $292.55 for pretrial computerized legal research. Tennes acknowledges that $97.20 of his photocopying expenses are not allowable, as this cost was incurred in copying cases for counsel's own convenience. The remaining disputed costs are recoverable. The Commonwealth incorrectly asks the court to apply the standards applicable generally to civil cases under Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1920. Awards of attorneys' fees and costs under fee shifting civil rights statutes, such as the ADEA, include out-of-pocket expenses reasonably incurred by an attorney and normally passed on to a fee-paying client. *Henry*, 738 F.2d at 192; *Reichman*, 818 F.2d at 283; *Dominic*, 652 F.Supp. at 822; *Bennett*, 619 F.Supp. at 655.

Tennes has fully documented and justified his bill of costs as reasonable and necessary. Accordingly, he will be awarded costs in the amount of $7,882.82 ($6,683.36, less $97.20, plus the undisputed additional $1,296.66 from Tennes' memorandum in support of his petition for attorneys' fees and costs, Steinbach aff., Exhibit B, PART I).

### V. Conclusions

The Commonwealth's motions for judgment notwithstanding the verdict and for a new trial are denied. Tennes' motion to amend judgment is granted. Tennes is awarded $124,497.76 in back pay and an additional $124,497.76 in liquidated damages, with statutory interest from January 25, 1990. Tennes' requests for front pay, reinstatement, and injunctive relief are denied.

Tennes' petition for attorneys' fees and costs is granted in part and denied in part. Tennes is awarded $98,857.50 in attorneys' fees and $7,882.82 in costs.