65 F.3d 170
 69 Fair Empl.Prac.Cas. (BNA) 768
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald E. EARLY, Plaintiff-Appellant,
v.
BANKERS LIFE & CASUALTY COMPANY, Defendant-Appellee.
 No. 94-2339.
 United States Court of Appeals, Seventh Circuit.
 Argued May 10, 1995.
Decided Sept. 5, 1995.
 
 Before POSNER, Chief Judge, and WOOD, Jr. and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 In 1990, Donald Early [Early], the plaintiff-appellant, sued his former employer, Bankers Life & Casualty Company [Bankers], the defendant-appellee, claiming his discharge in November 1988 was because of his age in violation of the Age Discrimination in Employment Act [ADEA], 29 U.S.C. Secs. 621 et seq. Bankers moved for summary judgment and the district court granted Bankers' motion. Early appeals, and we affirm.
 
 I.
 
 2
 Before addressing the merits of the summary judgment motion, there is a preliminary issue concerning Local Rules 12(m) and (n). With each motion for summary judgment, Local Rule 12(m) requires that the moving party include any affidavits or other materials as referred to in Fed.R.Civ.Pro. 56(e), a supporting memorandum of law, and a statement of material facts as to which the moving party contends there is no genuine issue and that the moving party is entitled to judgment as a matter of law. In response to the moving party's 12(m) statement, Local Rule 12(n) requires the opposing party to submit a concise response to each numbered paragraph in the moving party's statement, including specific references to affidavits, the record or other materials relied upon in the event of a disagreement. "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 12(n); see also LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 389 (7th Cir.1995); Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir.1992). Local Rules 12(m) and (n) facilitate the notion that the nonmoving party may not avoid summary judgment by merely resting on its pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The requirements of Local Rules 12(m) and (n) have been strictly enforced. Schulz, 965 F.2d at 519 (collecting cases). Furthermore, whether Rule 12(n) is strictly or leniently enforced is at the discretion of the district judge. Id. See also Bell, Boyd & Lloyd v. Tapy, 896 F.2d 1101, 1103 (7th Cir.1990).
 
 
 3
 We have repeatedly upheld the strict enforcement of Rule 12(n). Schulz, 965 F.2d at 519; Maksym v. Loesch, 937 F.2d 1237, 1240 (7th Cir.1991). The district court found that the defect in Early's 12(n) statement was that he failed to respond to each numbered paragraph of Bankers' 12(m) statement. Instead, Early attached a commentary on Bankers' fact portion of its memorandum of law as an exhibit to his response to Bankers' motion without reference to any supporting materials. At argument, Early's attorney told us that the reason for his failure to comply with Rule 12(n) was that he was a one-man operation who did not have the resources of a large firm and had previously been overburdened with the preparation of the pre-trial order. Needless to say, that is not a defense. Local Rule 12(n) is intended to isolate and dispose of factually unsupported claims by requiring that the opposing party support its position with evidence--as opposed to mere allegations--establishing a genuine issue for trial. MacDonald v. Commonwealth Edison Serv. Annuity, 810 F.Supp. 239, 241 (N.D.Ill.1993). The rule intentionally requires that denials to the 12(m) statements must be supported by specific facts. The district court concluded that Early's 12(n) statement was not a concise response to Banker's 12(m) statement and therefore deemed Bankers' factual statements as admitted. We find this was not an abuse of discretion. The facts have been adequately set forth in the district court's Memorandum Opinion and Order. Accordingly, we need only summarize the pertinent facts here.
 
 
 4
 Early began his career with Bankers in November 1969 and continued until he was terminated in November 1988 when he was fifty-six years old. Bankers is an Illinois corporation and is engaged in the business of marketing and selling insurance.
 
 
 5
 In 1969, Early was first hired as a life insurance sales manager. Early later held a variety of positions in the marketing division of Bankers, primarily positions concentrating on marketing life insurance and annuities.
 
 
 6
 In 1984, Bankers was acquired by ICH and began restructuring the organization. Bankers went from approximately 4,200 employees in 1984 to 2,800 in recent years. The largest reduction occurred prior to 1987. In 1988, forty-seven employees, including Early, were released.
 
 
 7
 Early gradually ascended within the organization until around 1985. In 1985, the then-president of Bankers decided to consolidate the actuarial department with the product development and marketing support division of the marketing department. Early was moved into the actuarial division as part of this transfer. While in the actuarial division, Early reported to two managers. Both executives reported having difficulties in dealing with Early.
 
 
 8
 In 1986, the marketing support in the actuarial department was transferred back to the marketing department. Early, however, was not transferred back as part of this reorganization. Some of Early's duties were reassigned to James Gaylord [Gaylord], Director of Agent Development Product Implementation, and Alice Bauer [Bauer], a member of Gaylord's staff. Gaylord is three years older than Early and Bauer is four years older. Bankers created a new position for Early so Early could continue with Bankers until he met the Rule of Seventy-five.[1] The position was a fixed position with no merit increases. Early did not have a staff and accepted assignments and reported directly to Gary Greenfield, Vice-President of Field Development [Greenfield].
 
 
 9
 Early, Greenfield, and Jimmy Bentle, Senior Vice-President of Marketing [Bentle], attempted to identify other positions within the marketing department for which Early was qualified, but Early was not qualified for managerial positions in areas other than marketing life insurance. In November 1988, Greenfield and Bentle agreed that Bankers had been unable to locate Early an appropriate position in the two years since his return to the marketing division and therefore could no longer justify the position. In November 1988, Early was terminated.
 
 
 10
 In November 1990, Early filed a complaint with the district court alleging that his termination violated the ADEA. The district court granted Bankers' motion for summary judgment and this appeal followed.
 
 II.
 
 11
 Turning to the merits of the motion, we review a grant of summary judgment by considering all factual issues in the light most favorable to the nonmoving party (herein Early) and determining de novo whether there was no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Cannon v. Wittek Companies, Int'l, 1995 WL 454014, * 2 (7th Cir. August 2, 1995); Jean v. Dugan, 20 F.3d 255, 259 (7th Cir.1994). The law of summary judgment is well-known, but is applied with added rigor in employment cases, where intent and credibility are crucial issues. Kralman v. Illinois Dept. of Veterans' Affairs, 23 F.3d 150, 152 (7th Cir.), cert. denied, 115 S.Ct. 359 (1994) (citing McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 370-71 (7th Cir.1992)). See also Sarsha v. Sears Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993).
 
 A.
 
 12
 In order to show a violation of the ADEA, the plaintiff must demonstrate only that age was a determining factor in the employer's decision to discharge and not that it was the sole motivating factor. McCoy, 957 F.2d at 371 (citations omitted). Where, as in this case, the plaintiff can offer no direct evidence of age discrimination, the plaintiff may proceed by using the burden-shifting alternative under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253-56 (1981). The plaintiff must first establish a prima facie case of discrimination by proving the following: (1) plaintiff was discharged or subjected to an adverse employment decision; (2) plaintiff was satisfying the employer's legitimate business expectations during his employment; (3) plaintiff was within the protected class; and (4) plaintiff was replaced by someone outside of the protected class. Anderson v. Stauffer Chemical Co., 965 F.2d 397, 400 (7th Cir.1992) (citing LaMontagne v. American Convenience Prod., Inc., 750 F.2d 1405, 1409 (7th Cir.1984)). Once a plaintiff proves all four elements, a prima facie case is established and a rebuttable presumption is created that the employer's decision to terminate was based on the "consideration of impermissible factors." Burdine, 450 U.S. at 254. See also DeLuca v. Winer Industries, 53 F.3d 793, 797 (7th Cir.1995). The burden then shifts to the employer to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason. Burdine, 450 U.S. at 254. The employer does not have to persuade the court it was actually motivated by the proffered reasons; it is sufficient if the employer raises a genuine issue as to whether it discriminated against the plaintiff. Id. Therefore, the ultimate burden of persuasion remains with the plaintiff. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993).
 
 B.
 
 13
 It is not contested that Early was at least forty years old and thus within the protected class at the time he was terminated. The ADEA prohibits discrimination based on age to those who are over forty. 29 U.S.C. Sec. 631(a). Early was terminated when he was fifty-six years of age. It is also not contested that Bankers terminated him. Bankers contends, however, that Early did not perform satisfactorily and was not replaced by a younger worker.
 
 
 14
 The uncontested facts indicate that Early was not satisfying the expectations of Bankers. When Early was transferred into the actuarial division Early began reporting to Paul Janus, Senior Vice President and Chief Actuary [Janus]. Janus reported having difficulties with Early because he believed Early did not focus on the issues. Therefore, conversations and meetings with Early tended to be long and rambling. He also expressed dissatisfaction because Early was not efficiently or timely completing matters. Janus subsequently ordered Early to report to another actuarial manager, Bernard Rabinowitz [Rabinowitz]. Rabinowitz stated that he also encountered the same sort of problems in dealing with Early. Rabinowitz was particularly dissatisfied with Early's conduct as Chairman of the Life Annuity Product Committee. Rabinowitz found that matters were not efficiently handled at the meetings because Early would reopen debates when it appeared the committee was ready to close, particularly when it involved a decision Early did not join. Janus removed Early as Chairman because Early's conduct in the meetings contributed in a large part to delays in getting the insurance products through the committee process.
 
 
 15
 Early argues by affidavits, including his own, that he was satisfactorily performing. Early contradicts the Janus and Rabinowitz depositions with the depositions of Jimmy Bentle, James Gaylord, and Gary Greenfield. Early asserts that each verified that he was doing well in his job and had a great deal of expertise in marketing life insurance products. Bentle stated that he did not recall anybody being unhappy with Early to the degree that his performance would have prompted any decision to terminate him. Bentle, however, directly following that statement admitted that he never had any firsthand knowledge of Early's performance or capabilities. Bentle was aware of problems agents in the field had in dealing with Early. Bentle stated he received reports that the agents were not receptive to having Early provide support to them.
 
 
 16
 Bentle also testified that it was a business decision to return the product implementation division back to the marketing department because it was not operating well in the actuarial department. As a result, by the time the product development division was transferred back to marketing, many of the functions Early performed were eliminated. Bentle and Greenfield both stated that Bankers planned to delete Early's position if he were to leave the company; Early could have been terminated at this point, but because he was only two years away from meeting the Rule of Seventy-five, Bankers thought it would try to find another position that could utilize his expertise at his current income within the two year time frame. As we have frequently stated:
 
 
 17
 This court does "not sit as a super-personnel department that reexamines an entity's business decisions." McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir.1992) (citation and internal quotations marks omitted). "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere. Poullard v. Rea Magnet Wire Co., 824 F.2d 557, 560 (7th Cir.), cert. denied, 484 U.S. 977 (1987).
 
 
 18
 Sample v. Aldi, Inc., 1995 WL 446993, * 7 (7th Cir. July 28, 1995) (brackets in original). Rather our inquiry is limited to "whether the employer gave an honest explanation of its behavior." Poullard, 824 F.2d at 560.
 
 
 19
 Early also offers the testimony of Gaylord. Gaylord related that Early had very good product knowledge and was well educated in his specialty. Product knowledge may be an imperative quality for an employee marketing life insurance products, but as is evidenced by the testimony of Bentle and Greenfield, Bankers expected other necessary qualities from its employees. Early also contradicts the evidence with his own affidavit stating that he was a good communicator and was satisfying the needs of Bankers. Early's responses only offer others' value judgments, and his own opinion that at certain times and in certain respects his work was good. These contrary assessments of his performance, however, do not impeach the legitimacy of his employer's expectations. The ADEA was not intended as a vehicle for judicial review of business decisions. Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir.1980). Early also asserts that when Greenfield fired him, Greenfield stated that his performance had no impact on the decision. Greenfield testified that he had made that statement because he was firing him. As the district court noted, although favorable inferences must be drawn in favor of Early, the statement must be viewed in its proper context.
 
 
 20
 Second, Early contends that his performance evaluation, which had a "satisfactory" rating by Janus, is evidence he was meeting Bankers' expectations. This evaluation, however, was not as complimentary as Early asserts. The rating is based on a scale ranging from unsatisfactory to satisfactory to superior to outstanding. To say an employee is performing satisfactory on this type of scale is not evidence he is meeting the expectations of his employer. The record reveals that Bankers did have legitimate concern for Early's performance, and "so long as [Bankers] honestly believed that [Early] was not [performing up to standards], its business judgment will not be second-guessed by federal courts applying the ADEA." McCoy, 957 F.2d at 373. Further, it is significant that the employment decisions that Early now challenges occurred over a two year span of time.
 
 
 21
 Bankers also contends that Early was not succeeded by a younger worker. Bankers asserts that Early's duties were delegated to James Gaylord in the marketing department, who is three years older than Early. Therefore, Bankers contends that Early failed to present any evidence that demonstrates either younger employees were treated more favorably or replaced Early. Early argues that James White [White], who was thirty-eight years of age, took over 50 percent of his former job responsibilities, most significantly his duties concerning the Computer Analysis Proposal System program [CAPS]. Early also asserts that the district court did not give proper credence to the affidavit of Tim Baumann, a younger member of Gaylord's staff, who was given some of Early's prior assignments. While Early need not prove that persons who were not members of the protected class actually replaced him, he still must show that younger persons, whether above or below the age of forty, replaced him or received favorable treatment. Kralman, 23 F.3d at 155-56.
 
 
 22
 To support Early's argument, Early attached White's affidavit to his response to the motion for summary judgment as an attempt to infer that White took over approximately half of Early's job duties. White, who was thirty-eight years old, was hired by Bankers in 1987. White stated that he had later learned that the CAPS staff previously reported to Early and that he was responsible for their training and supervising.
 
 
 23
 The district court also considered but dismissed White's statements that he performed relatively half of the functions Early previously performed on the grounds that the statements were not based on personal knowledge. The record revealed that White did not start at Bankers until 1987 and therefore would not have had prior personal knowledge of what job duties Early previously performed. Testimony about matters outside affiant's personal knowledge is not admissible in an affidavit used to support or resist the grant of summary judgment. Visser v. Packing Engineering Assoc., Inc., 924 F.2d 655, 659 (7th Cir.1991). Further, Early asserts that White took over 50 percent of his duties, but there is no other admissible evidence to support that either White assumed 50 percent of Early's job responsibilities or that the 50 percent figure is even an accurate estimation. There was also no evidence that Early was ever responsible for the CAPS program and then later lost that responsibility.
 
 
 24
 Early also argued that Tim Baumann, a younger employee on Gaylord's staff, also assumed a portion of what had been Early's duties of preparing marketing support materials for life insurance and annuities. Baumann admitted that he was younger than Early and had assumed his duties. However, the district court found, and the record supports, that Baumann was a lower-level employee on Gaylord's staff who received his assignments from Gaylord. Gaylord's job description had been expanded in 1986 to include some of Early's prior responsibilities. Therefore, it is not unreasonable nor evidence of age discrimination that Gaylord in turn delegated some of these duties to his staff members.
 
 
 25
 The district court went on to find that there were several nonpretextual reasons for Bankers' termination of Early. Because, however, we find that Early fails to meet the prima facie case requirements, our analysis need not continue. Accordingly, the district court's summary judgment is AFFIRMED.
 
 
 
 [1]
 The Rule of Seventy-Five is a Bankers' policy by which employees can become eligible for early retirement based upon a combination of their age and their years of service. The retirees also have greater accessibility to company health insurance benefits. Early needed approximately two more years of employment to qualify